TENNESSEE ROOFING & TILE COMPANY *v.* L. C. ELY, *et al.*

(*Knoxville.* September Term, 1929.)

Opinion filed November 16, 1929.

WHITE & LEONARD, for complainant, appellees.

AYRES & BROUGHTON and L. C. ELY, for defendant, appellants.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

This cause is before us by *certiorari* to the Court of Appeals, the writ having heretofore issued on the petition of the defendant and cross-complainants, L. C. Ely and wife.

The controversy to be determined grows out of a contract of sale whereby the original complainant, Tennessee Roofing & Tile Company, sold to Ely and wife a quantity of building blocks for use in constructing the supporting and partition walls of a dwelling house, the sale having been made with an express warranty that the blocks were made of cement, and the refuse of coke ovens which had been subjected to a high degree of heat, and that they were free from combustible matter so as to be fireproof.

The Court of Appeals found that this express warranty was made by the seller, and acted upon by the buyer, and that the warranty was breached by the seller. The seller did not file petition for *certiorari*, and the findings of fact made against it by that court are no longer open for contest. *Brenizer* v. *N. C. & St. L. Ry.*, 156 Tenn., 479, 494.

The suit was instituted by the seller to recover the balance of $614 due on the purchase price. The breach of warranty was pleaded in the answer of Ely and wife as a defense to the action for the purchase price, and by cross-bill damages were sought for the injury resulting to them from the use of the blocks of in-

ferior quality in their building. The Chancellor held that no substantial breach of warranty was shown and that the blocks did not contain sufficient coal or combustible matter "to materially affect the same for the purpose for which they were sold." He accordingly dismissed the cross-bill and decreed for complainant on the original bill.

The Court of Appeals, after reversing the decree of the Chancellor on the ground that the warranty had been breached, further held that Ely and wife discovered the breach when only a few hundred of the blocks had been placed in the walls, that it was then their duty to minimize their damages by refusing to use more of the blocks, and having failed to do so, the damages which they would recover would be limited to the difference between the value of the blocks purchased and the value of the blocks actually received. That court then remanded the cause for a reference to determine the amount of damages sustained on the basis stated. The assignments of error of cross-complainants attack this ruling of the Court of Appeals fixing the measure of their damages.

The material facts are these: The manufactured blocks were coated with cement so as to conceal the material of which they were constructed. When about three hundred had been placed, a mason called Mr. Ely's attention to a block he had broken in two, and suggested the presence of coal in the blocks. Ely was unfamiliar with the material and called complainant's president who came to the site of the building and again assured him that there was no coal in the blocks and told him "to go on and use them and he would guarantee them." Ely accepted and believed these statements of complainant's president and used the blocks. After the building was

practically completed, Ely caused a chemical analysis to be made of the contents of the blocks and it was discovered that nearly fifty per cent was combustible matter.

The Court of Appeals, from an inspection of some of the blocks filed as exhibits, held that the presence of particles of coal was so obvious as to make the deficiency in quality apparent and patent, and that the court would not listen "when the buyer said he did not know coal when he saw it," and that if he was deceived, he could have made the analytical test before using the blocks as well as after using them.

The chancellor had before him the same exhibits, and he decreed that "the amount of coal shown by the proof in said blocks is not sufficient to materially affect the same for the purpose for which they were sold."

This difference of opinion between impartial arbiters strongly argues that the deficiency in the quality of the blocks was not so patent as to deprive Ely, unfamiliar with such materials, of the right to rely upon the assurances and guaranty of the complainant's president, that the blocks were as warranted. Certainly the complainant had made no contention that the deficiency was obvious and patent, for it contended through the Chancery Court and in the Court of Appeals that the blocks contained no coal at all.

When Ely received his first intimation of the presence of coal in the blocks he notified complainant, the seller. With the same information possessed by Ely, if not with actual knowledge of the facts, the complainant reiterated the warranty under which the blocks were sold, and told Ely to go on and use them under complainant's guaranty. We think the proof fails to sustain the conclusion of the Court of Appeals that Ely unduly augmented his dam-

ages by yielding his apprehensions to the positive assurances of complainant's president, the manufacturer of the blocks, in whom he placed confidence. *Keely* v. *Turbeville,* 79 Tenn., 339; *Cotton Oil Co.* v. *Gin & Lumber Co.,* 138 Tenn., 58, 69. In the case last cited the court said:

■ "The authorities all hold that as to latent defects the buyer may take and enforce an express warranty, notwithstanding the fact that he may have personally examined the goods."

■ The Uniform Sales Law, Acts 1919, chapter 118, section 69, subsections 6 and 7, under the caption "Remedies for Breach of Warranty," provides:

"(6) The measure of damages for breach of warranty is the loss directly, and naturally resulting, in the ordinary course of events, from the breach of warranty.

"(7) In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty."

The facts, that the blocks were sold to Ely for the purpose of use in the walls of his proposed dwelling house and that they had become an integral part of the building before knowledge of the breach of warranty was acquired by the buyers, constitute "special circumstances showing proximate damages in a greater amount" than would follow from the application of the rule stated in subsection 7 of section 69 of the statute, above quoted.

In *Marcum* v. *Potter,* 148 Tenn., 251, it is held that the purpose of the rule stated in subsection 6, *supra,* "is to ascertain the true amount of the loss actually and directly sustained." Application of this rule to the facts

of this cause, it was held by the Court of Appeals, would entitle the cross-complainant to recover "the depreciated value of his property after deducting the fair value of the defective blocks." Application of this rule was, however, denied by that court because of their conclusion that Mr. Ely knew the blocks contained coal before he used them.

We think the rule stated in subsection 6 is the measure of cross complainants' recovery, and that they are entitled to a decree for the "true amount of the loss actually and directly sustained" as the result of the use of the defective blocks.

The decree of the Court of Appeals will accordingly be modified so as to direct that a reference be ordered and held on the remand on the extent to which the building of cross complainants is injured by the use of the blocks which are not fireproof instead of those of the kind and character warranted, such injury to be measured by the difference between the sale or market value of the building as constructed and its sale or market value if the blocks used in its construction had been the fireproof blocks as warranted. The cross complainants will be entitled to a decree for their damage so ascertained; and this amount will be set-off against the unpaid balance of the purchase price of the blocks for which the cross complainants are liable under the original bill.

The costs accrued in this court will be paid by cross defendant.