BRIARGROVE SHOPPING CENTER
JOINT VENTURE, Appellant,

v.

VILAR, INC., Appellee.

No. 01–81–0847–CV.

Court of Appeals of Texas,
(1st Dist.).

Nov. 30, 1982.
Rehearing Denied Dec. 23, 1982.

Brice Tondre, Houston, for appellant.

Michael Neel, Houston, for appellee.

Before EVANS, C.J., and DYESS and STILLEY, JJ.

## OPINION

DYESS, Justice.

The appellant brought this suit in the court below claiming that the appellee violated the terms of a lease entered into between the two. The appellee filed a cross claim against the appellant alleging that the appellant constructively evicted the appellee, thereby breaching the lease and causing the appellee to incur expenses it would not otherwise have incurred. The trial was before a jury which decided in favor of the appellee.

The appellant raises seventeen points of error, all of which we overrule, affirming the judgment below.

In September 1975 the appellant, Briargrove Shopping Center, leased a warehouse at the back of the shopping center to the appellee, Vilar, Inc., d/b/a Swedish Auto Repair, for a period of three years. There were two aspects of the property that were appealing to Rolf Larsson, the President of appellee: (1) the cost of renting the building, which was only $0.10 per square foot and (2) a vacant concrete area in front of the building that would hold a number of cars. Larsson testified that it would be impossible for an auto repair shop to profitably exist without the use of a parking lot near the garage on which cars could be parked when they were not being worked on.

When Larsson signed the lease, there was no discussion of rules or regulations concerning the parking area in front of the premises, though an agreement was made that mechanics would not work on cars on the parking area outside of the shop.

In July, Larsson learned that the Shopping Center planned to build a theatre in front of his shop. Although this worried him slightly, it did not appear at that time that the theatre would take up a major portion of the area in front of the shop. The shop, located behind the shopping center, was situated at the intersection of two alleyways, one leading from the street in front of the shopping center to the back of the shopping center, the second providing access from a side street.

The construction began around September or October of 1976 and continued at least through December 31, 1976, when Larsson moved to a new location. There was testimony that the construction consumed all but a strip of ten feet in front of the shop. One of the two accessways to the repair shop was completely cut off, except for a shell driveway built around the construction site, and even the shell driveway was often impassable for cars because it was so muddy. The other alleyway (hereinafter referred to as the concrete alleyway) was also frequently blocked by workmen and machines. One of Larsson's customers testified that on at least one occasion he was blocked in by delivery trucks.

Not only did Larsson receive complaints from customers, but also from his mechanics, who were forced to walk much farther to reach the cars and to wash their feet before getting into the cars because of the muddy conditions around the construction. Larsson was allowed to park some cars along the concrete alleyway during the construction but he was told that after the completion of the theatre, the alleyway would return to a no-parking zone. Larsson decided that he could no longer continue a profitable business at Briargrove Shopping Center without sufficient parking near the shop. He was also afraid of losing some of his mechanics so he rented a new shop, and moved there as of January 1, 1977. Thus, December, 1976 was the last month for which he paid rent on his three year lease at Briargrove.

The appellant's first six points of error pertain to special issue number one by which the jury was asked if Briargrove breached the lease it signed with Swedish Auto, and if the breach was a material breach.

Points one through three will be considered together because they require this court to use the same scrutiny in answering them. In point one, the appellant claims that the court erred in submitting special issue number one because there was no material fact issue with respect to the breach of the lease. In point two, the appellant claims that the trial court erred in refusing the appellant's motion for a directed verdict concerning the appellee's claim that the appellant breached the lease. In the third point of error, the appellant maintains that its requests for a judgment *non obstante verdicto* and to disregard special issue number one should have been granted.

When an appellant maintains that the trial court erred in submitting a special issue to the jury or raises either of the claims raised by the appellant in points 2 and 3, he has raised a "no evidence" or legal insufficiency point. *Casey v. Barkley,* 527 S.W.2d 256, 260 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd. n.r.e.); *Southwestern Bell Telephone Co. v. Sims,* 615 S.W.2d 858 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). In reviewing such an objection, the appellate court must consider only the evidence and inferences that may be reasonably drawn therefrom that are favorable to the issues submitted to the jury and the conclusions reached by it, and to disregard all of the evidence and inferences to the contrary. *Bounds v. Caudle,* 560 S.W.2d 925 (Tex.1977). The trial court can properly submit an issue where there is any evidence more than a scintilla which is probative in supporting the submission. *Everman Corporation v. Haws and Garrett General Contractors, Inc.,* 578 S.W.2d 239, 544 (Tex.Civ.App.—Fort Worth 1979, no writ). Evidence has probative force when it is more than a mere surmise or suspicion and serves to prove the asserted proposition. *First National Bank of Amarillo v. Bavert,* 622 S.W.2d 464, 467 (Tex.Civ.App.—Amarillo 1981). There was more than a scintilla of evidence to support the submission on material breach.

Although the lease reserved the right of the landlord to change "... the entrances, exits, traffic lanes and the boundaries and *locations* of the parking area or areas ...," it guaranteed that "... said parking area or areas *shall at all times be equal or equivalent ...*" to the area indicated on an attached exhibit. There was no question that the area immediately in front of the shop was greatly diminished in size by the construction.

Moreover, the appellee testified that his garage was not large enough to hold all of the cars that came through his shop, and, consequently, he needed the area for parking. The only other parking area available to the appellee was 300–400 feet from the shop and required the mechanics to walk much farther to reach the cars on which they were to work. One of the mechanics testified that he would not have remained an employee very long under the conditions present from September to December. He also testified that he was having to work two to three additional hours a day to make the same amount of money as before the construction began.

Not only were the mechanics having to go farther to reach the cars, but they were having to trod through mud to reach them. One of the two accessways was often blocked by construction workers and equipment or delivery trucks. A customer testified that he was blocked in on at least one occasion. The second accessway was often impassable because it was torn up by construction, and the shell driveway built to circumvent the work was often too muddy to traverse.

The above constitutes more than a scintilla of evidence. Points of error one through three are overruled.

In its fourth point of error the appellant complains of the submission of special issue number one because this permitted the jury to construe the contract, a function reserved solely for the judge.

The appellant is quite correct in his position that it is the court's duty to construe a contract that has not been questioned as ambiguous. *Pickering v. First Pyramid Life Insurance Co. of Amarillo,*

491 S.W.2d 184 (Tex.Civ.App.—Beaumont 1973, writ ref'd. n.r.e.). However, special issue number one did not require that the jury construe the contract in determining whether or not a breach of the contract occurred. *Cowman v. Allen Monuments, Inc.,* 500 S.W.2d 223 (Tex.Civ.App.—Texarkana 1973, no writ). Such a question is a fact issue, the conclusion being reached by applying the clear words of the contract to the situation at hand. The contract in this case guaranteed that the common areas, parking areas, and alleyways would not be decreased in size. Whether or not the building of the theatre violated that provision, and was a material breach, was a question of fact for the jury. *Advance Components, Inc. v. Goodstein,* 608 S.W.2d 737, 739 (Tex.Civ.App.—Dallas 1980, writ ref'd. n.r.e.). *Cannan v. Varn,* 591 S.W.2d 583 (Tex.Civ.App.—Corpus Christi 1979, no writ) contained a special issue exactly like ours except for minor differences due to the different fact situation. The appellant in the case also questioned the propriety of the special issue on the basis that it called for the jury to construe the contract. The court had the following reply for the contention.

> The jury was not presented with the construction of the contract but rather the ascertainment of whether there was a breach of the contract on or about January 15, 1975. The contract, even though allowing for some variation, was clear in that it did specify the time for performance. The jury's duty was to decide a factual question whether performance occurred within that time.

*Id.* at 589.

The fourth point of error is overruled.

In point of error five the appellant complains of the trial judge's refusal to submit, in lieu of special issue number one, the special issue requested by the appellant. The special issue submitted to the jury asked, "Do you find from a preponderance of the evidence that Briargrove Shopping Center materially breached the lease of September 4, 1975, between it and Swedish Auto Repair?" The special issue requested

by the appellant, and refused by the court, would have inquired the following of the jury: "Do you find from a preponderance of the evidence that the building of the theater on the Briargrove Shopping Center premises at the time in question so reduced the parking and common areas that there was not sufficient space anywhere on said premises for Swedish Auto Repair to park cars which it serviced?"

As evidenced by his pleadings, and the evidence submitted at trial, the appellee's position throughout the proceedings was that the appellant did not live up to the guarantees set out in the lease, and by not doing so, constructively evicted the appellee.

By its very language, the lease places a duty on the landlord not to decrease the amount of parking area or areas. It also provides the tenant the right to use the common and parking areas for ingress and egress to its shop.

The issues presented by the case were, 1) whether a breach of the contract had occurred and, if so, whether the breach was material and 2) whether the appellee was constructively evicted.

■ In deciding which special issues to submit to the jurors, the trial court is guided by the requirement that only the controlling issues raised by the pleadings and the evidence are to be submitted. *Levine v. Smith,* 625 S.W.2d 777 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd. n.r.e.). "A controlling issue is one that, when answered favorably to the theory in which it is presented, will form the basis for a judgment for the proponent of the issue." *Id.* at 779.

■ Applying the above to the appellant's point of error, one can determine that the special issue submitted by the appellant is not a controlling issue. It is more in the nature of an evidentiary issue, going to the materiality of the breach. To prove that a breach occurred, the appellee would merely have to prove that the appellant decreased the size of the parking and common areas or that the accessways had effectively been

made impassable. Obviously the special issue submitted by the appellant would require more of the appellant than needed to prove a breach. Furthermore, it would not aid the jury or the judge in determining if a material breach occurred, which was a central issue in the case. *Sell v. C.R. Smith Volkswagen, Inc.,* 611 S.W.2d 897 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); *Neuhaus v. Kain,* 557 S.W.2d 125, 135–136 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd. n.r.e.).

The appellant's fifth point of error is overruled.

In the sixth point of error the appellant claims that special issue number one should not have been submitted because the appellee's attorney made a "judicial admission" that the appellant was entitled to eliminate the area on which the appellee was parking cars. In initial response to this point, consider the discussion of points of error one through three in which we concluded that the court did not err in submitting the issue to the jury.

Furthermore, the appellant misinterprets the attorney's comments. When one reads the statement in context, it is clear that the attorney was not making an admission of any sort.

> In other words, what they guaranteed was, and I will agree with something Mr. Tondre is going to argue they did not guarantee that this area would always be here. What they did guarantee was that the size of the parking area the amount of parking and common area would never be decreased. (S.F. 426)

The sixth point of error is overruled.

■ Points seven through ten pertain to special issue number two in which the jury was asked if Swedish Auto was constructively evicted. In points seven and eight the appellant asserts that the court erred in submitting the special issue because there was either no evidence, or insufficient evidence, of constructive eviction.

As with points one through three, a review of all of these points of error requires consideration only of that evidence favorable to the issue submitted to the jury and the conclusions reached by it, disregarding all evidence to the contrary. *Southwestern Bell,* supra; *Bounds,* supra.

Constructive eviction was defined for the jury as being a composite of four distinct elements: 1) an intention on the landlord's part that the tenant no longer enjoy the premises, 2) a material act by the landlord substantially interfering with the use and enjoyment of the premises for the purposes for which they are let; 3) an act that permanently deprives the tenant of the use and enjoyment of the premises, and 4) an abandonment of the premises by the tenant within a reasonable time after the commission of the act. Conduct permitted by the lease was explicitly excluded from the jury's consideration as conduct constituting a constructive eviction. The jury was also given an instruction on circumstantial evidence. There was testimony that the appellee did not have enough room inside the garage in which to place the cars on which work was to be done. Larsson testified that there were generally seven to eleven cars parked on the lot. There was also testimony that the managers from the shopping center knew that the appellee used the parking lot to park its overload of cars because they would drop by periodically and could see all of the Volvos. When the construction started in November, the entire parking area in front of the repair shop was destroyed. No longer being able to use the parking area, the mechanics had to resort to parking cars along the side of buildings along the concrete alleyway, and to parking them in lots that were farther from the shop than the lot they had been using. Larsson and one of his employees testified that the conditions made operations extremely difficult. In fact, one of the employees testified that he would not have stayed with Swedish Auto Repair Shop if conditions had continued for much longer.

The lease was also introduced into evidence. In it the landlord guaranteed not to decrease at any time the size of parking and other areas provided to the tenants. Lars-

son testified that he moved out of the premises the last week of December, leaving none of his property at the old shop.

There is, in the above evidence, support for the proposition that the acts of Briargrove substantially interfered with Swedish Auto Repairs' use and enjoyment of the premises, the second of the four criteria quoted by the trial Judge. *Cox Bakeries of North Dakota, Inc. v. Homart Development Corporation,* 515 S.W.2d 326 (Tex.Civ.App.—Dallas 1974, no writ). There is also support for an inferred intention on the part of the landlord that Larsson no longer enjoy the premises based on the shopping center's actions. *Id.; Steinberg v. Medical Equipment Rental Services, Inc.,* 505 S.W.2d 692 (Tex.Civ.App.—Dallas 1974, no writ). Neither is there doubt that Larsson moved out within a reasonable time after the commission of the act. *Richker v. Georgandis,* 323 S.W.2d 90 (Tex.Civ.App.—Galveston 1959, ref. n.r.e.).

The closest question notedly appears when one attempts to determine if the landlord's actions permanently deprived Larsson of the use and enjoyment of the premises.

There was no testimony indicating whether the theater had a parking lot, and if so, where the lot was located. Neither was exact information given regarding the amount of parking space lost because of the theater. We have no idea if the shop could have parked cars in the area after the construction was completed.

Since there was no testimony concerning the above, the decision for the reviewer on appeal would be whether or not the two to three months of construction was long enough or pervasive enough to constitute a "permanent" deprivation. There is very little authority on what constitutes "permanent" deprivation.

We conclude that the deprivation of the use and enjoyment of the premises encountered by the appellee was substantial enough to constitute a permanent deprivation within the meaning of the constructive eviction rule. We rely on *Richker v. Georgandis,* 323 S.W.2d 90 (Tex.Civ.App.—Gal-

veston 1959, writ ref'd n.r.e.) for this decision. This court decided in *Richker* that a constructive eviction had occurred based on a showing that the plaintiff had been deprived of the substantial use and enjoyment of his premises for a nine month period of a six year lease. During the nine months the plaintiff was forced to endure a barricade that completely engulfed the front of his restaurant, and had to endure a great deal of noise and dust from the construction. He also suffered a loss in profits.

Although no testimony was presented on the point in the case at bar, common knowledge dictates that a theater cannot be built in two months. The appellee would have been subjected to the problems he complained of for at least several more months. There was, in short, evidence in support of the jury's conclusion and for submission of the special issue. Points of error seven through ten are overruled.

■ In points of error eleven through fourteen the appellant alleges that the trial court committed reversible error in submitting special issue number four to the jury. Special issue four asked the jury,

> What sum of money, if any, do you find from a preponderance of the evidence would fairly and reasonably compensate Swedish Auto Repair for leasing comparable premises for the remainder of the term of the original lease, less the amount which Swedish Auto Repair would have had to pay to Briargrove Shopping Center under the original lease?

The appellant's claim is twofold. First, Briargrove asserts that the special issue should not have been submitted because there was no evidence of the cost of leasing premises comparable to those leased from Briargrove. Second, it claims that its special issue should have been submitted. Briargrove's proposed special issue asked the following.

> What do you find from a preponderance of the evidence to be the market value of the premises leased by Swedish Auto Repair in Briargrove Shopping Center for the unexpired term of Swedish Auto Repairs' lease thereof?

The proper measure of *general damages* for a wrongful eviction of a tenant by a landlord is the difference between the market rental value of the leasehold for the unexpired term of the lease and the stipulated rentals. 17 TEX.JUR.2d Damages § 54; *B.F. Avery & Sons Plow Co. v. Kennerly,* 12 S.W.2d 140 (Tex.1929); *McNabb v. Taylor Oil Field Rental Co.,* 428 S.W.2d 714 (Tex. Civ.App.—San Antonio 1968, writ ref'd. n.r. e.). *B.F. Avery & Sons* explains the concept well.

It is the object and purpose of the law to compensate a tenant who has been wrongfully evicted from the premises for the actual loss sustained. By permitting him to recover the difference between the market rental value of the leased premises for the unexpired term and the rental reserved in the conract, he is in position to obtain other premises similarly situated and equally desirable, and thus will be adequately compensated for the loss he sustained.

*Id.* at 141.

The appellant argues that an exception to this general rule arises when the tenant cannot go at once into the market and obtain like property. *Reavis v. Taylor,* 162 S.W.2d 1030, 1036 (Tex.Civ.App. —Eastland 1942, writ ref'd. w.o.m.). The appellant has misinterpreted the language it quotes. It was obviously the intent of the court in *Reavis,* and of the case that the court quoted in its opinion, *Buck v. Morrow,* 159 Tenn. 628, 21 S.W. 398 (Tex.Civ.App. 1893, no writ), that a party who has been evicted may not only recover *general damages*—which are reached by ascertaining the difference between the stipulated rentals and value of the unexpired term—but may also recover any *special damages* incurred, such as net profits, *Birge v. Toppers Menswear, Inc.,* 473 S.W.2d 79 (Tex.Civ.

App.—Dallas 1971, writ ref'd. n.r.e.) and expense of removal from the premises, 52 C.J.S. § 461(4)b. There is, then, no exception to the general rule concerning general damages, but merely a second portion of the rule providing for recovery of special damages.[1] 21 S.W. at 398.

An issue on special damages was properly submitted to the jury. Special issue no. 4, the issue on general damages, did not follow the wording of the general rule discussed above because it allowed the jury to determine the amount of money that would reasonably compensate the appellee for leasing *comparable premises.* It should have asked the jury to determine the market value of the Briargrove Shopping Center lease. Despite the inaccuracy of the issue, we are of the opinion that this difference was not harmful error.

The purpose of the law, as stated in the *B.F. Avery & Sons* case, is to compensate a tenant who has been wrongfully evicted for the actual loss sustained. The specific object is to place the deposed tenant in a position "to obtain other premises similarly situated and equally desirable...." 12 S.W.2d at 141. Even a cursory reading of the issue submitted to the jury indicates that the jury was required to decide on a figure that would compensate the appellee for leasing premises similarly situated to the Briargrove lease. Furthermore, Larsson, the owner of the shop, testified concerning the prevailing rates in the area for a shop "about the same size" as the Briargrove shop. From the above, it is apparent that the jury was required to find the cost of a lease that was a suitable replacement for the Briargrove lease. Any distinction between the issue given to the jury and the one requested by the appellant is a matter of form rather than substance.[2]

---

1. The only time that a wrongfully evicted tenant may not recover the difference between the market value of the property and the stipulated rentals is when lost profits are also recovered. An award including both would give the tenant a double recovery. *Birge v. Toppers Menswear, Inc.,* 473 S.W.2d 79 (Tex.Civ.App.—Dallas 1971, writ ref'd. n.r.e.).

2. In equating the two issues, we are considering the fact that the judge would be required to subtract the stipulated rentals from any damage amount returned under the appellant's issue in order to reach the proper amount.

Points eleven through thirteen are also overruled because there was evidence of the market value of the Briargrove premises. The evidence can be found in the testimony of Rolf Larsson.

Q. All right, sir. When you began your search for a new location were you looking for a place that was much larger or approximately the same size or what?

A. Looking for one about the same size.

Q. All right, sir.

A. Of course, yeah.

Q. Were you aware of the rental rates, the prevailing rates, in that area during that time?

A. Quite so. There was a number of people that told me what it was going to cost.

Q. All right, sir. And was this rent rate that you were paying [in the new location] consistent with the prevailing rates in the area?

Mr. TONDRE: Your Honor, we will object. No foundation.

THE COURT: Overruled.

A. It was good, yes.

The appellant complains in points fifteen and sixteen of the amount of attorney's fees awarded by the jury. In point fifteen the appellant asserts the fees are invalid because they do not indicate what portion of the fees are attributable to Swedish Auto Repair and what portion to Rolf Larsson. According to the appellant, Rolf Larsson should not have been awarded attorney's fees because he was a losing party. From the appellee's pleadings one can tell that no distinction was being made by the appellee between Vilar, Inc. and Rolf Larsson, that the damages incurred by Vilar, Inc. were the same as those encountered by Rolf Larsson. The only apparent reason for Rolf Larsson to be included as an individual is the fact that he signed the lease in an individual capacity as well as in his capacity as representative for Vilar, Inc. For all practical purposes they are one and the same. Larsson is the President of the company and the major, if not sole, stockholder. The point of error is overruled.

In point of error sixteen the appellant complains of the amount of attorney's fees awarded, claiming that there was insufficient evidence to support the jury's finding.

The amount of attorneys fees to be awarded is a question of fact for the jury. *Graves v. Sommerfeld,* 618 S.W.2d 952 (Tex.Civ.App.—Waco 1981, no writ). As stated by the Waco court,

It is in the province of the jury to determine what is the reasonable value of an attorney's services, and the jury may take into consideration the facts before them in relation to the services rendered, as well the estimates of their value made by the attorneys who testified.

*Id.* at 954.

The mere fact that attorney's fees constitute a greater amount of the total award than do actual damages, will not require a reversal. *Union National Life Insurance Co. v. Reese,* 476 S.W.2d 928 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd. n.r.e.).

The attorney testified concerning the amount of time expended on the case and the number of hearings and appearances he was required to make. The award was not unreasonable. *Id.* Point of error sixteen is overruled.

The appellant's final point of error pertains to the assignment by Rune Viking of his rights in the cause of action. The appellant maintains that the assignment was invalid because on the date that the instrument was signed, Rune Viking had not filed suit as required under Tex. Rev.Civ.Stat.Ann. art. 6636 and *Lowe v. Employers Casualty Co.,* 479 S.W.2d 383 (Tex.Civ.App.—Fort Worth 1972, no writ). Contrary to the interpretation attributed to them by the appellant, these authorities do not require an individual assigning an interest in a suit to have filed a suit himself concerning the events from which his rights arose. A suit affecting the assignor's rights must be pending at the time the assignment is executed, but the assignor need not have instituted the suit. *Id.* When Rune Viking assigned his interests, a suit in which he

was named individually as defendant had been filed. Point of error seventeen is overruled.

The judgment is affirmed.