**Opinion issued July 9, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00051-CV

———————————

**ALBERT E. MAGILL AND JENNIFER T. MAGILL, Appellants**

**V.**

**WILLIAM HUGH WATSON, JR., AS TRUSTEE OF THE WILLIAM WATSON, JR. TRUST-NON-EXEMPT AND ROBIN WATSON LIVESAY AND JAMES J. LIVESAY, CO-TRUSTEES OF THE ROBIN WATSON LIVESAY TRUST-NON-EXEMPT, Appellees**

On Appeal from the 151st District Court
Harris County, Texas
Trial Court Case No. 2009-54308

## O P I N I O N

After a jury trial on a seller's claim arising out of the breach of an earnest money contract, the trial court signed a judgment awarding the seller of real

property the earnest money, plus liquidated damages in an amount equal to three times the earnest money, as provided in the contract, and attorney's fees, interest, and costs. On appeal, the buyer (1) challenges the plaintiffs' standing to bring the suit, (2) contends that the liquidated damages clause of the contract is an unenforceable penalty, and (3) argues that the evidence that the buyer breached the contract is insufficient to support the trial court's judgment. We affirm in part and reverse and render in part.

## BACKGROUND

Albert and Jennifer Magill entered into a contract to purchase residential real estate from the Estate of William H. Watson, Sr. ("the Estate"). The original closing date of the contract was November 25, 2008, and, by amendment, was extended by agreement of the parties until January 25, 2009. The Magills deposited $8,000 in earnest money with the title company in connection with the contract and amendment.

The contract provided that the "Buyer may object in writing to defects, exceptions, or encumbrances to title . . . which prohibit the following use or activity: Construction of a new, single family residential home to be two stories containing approximately 5,000 square feet."

The garage on the house that the Magills wished to build encroached on the rear set back line of the property, and the Magills were unable to obtain a variance

2

from the homeowner's association to allow the construction of the garage as planned. On January 23, 2009, two days before the closing date, the Magills terminated the contract. The escrow agent sent two forms authorizing release of the earnest money; one form released the earnest money to the Magills and one form released the earnest money to the Estate. The Magills signed the form authorizing the release of the earnest money to themselves.

After obtaining an assignment from the Estate on January 27, 2009, the trustees of the William Hugh Watson, Jr. Trust-Non-Exempt and the Robin Watson Livesay Trust-Non-Exempt, filed suit against the Magills on August 26, 2009, alleging breach of the contract. On June 29, 2009, the trustees sent the Magills a letter demanding that they execute a release of the earnest money. The Magills did not do so. The trustees filed suit against the Magills on August 26, 2009, alleging that they had breached the contract and seeking recovery of the earnest money, plus three times the amount of the earnest money, based on the following contractual provisions:

> 15. DEFAULT: If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages . . . .

> 18.D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent . . . will be liable to the other party for liquidated damages in an amount equal to the sum of (i)

3

three times the amount of the earnest money; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

The case was tried to a jury, which found that the Magills had breached the contract. Thereafter, the trial court entered a final judgment awarding the trustees $32,000.00, which represents the earnest money and liquidated damages in an amount of three times the earnest money, plus attorney's fees, interest, and costs.

## STANDING

On January 27, 2009, before suit was filed by the Estate, the Estate executed the following assignment to the trusts:

> For and in consideration of $10.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, the Estate of William H. Watson, Sr., Deceased (the "Estate") does hereby bargain, sell, transfer and convey to the Williams Watson, Jr. Trust—Non-Exempt and the Robin Watson Livesay Trust—Non-Exempt, in equal, undivided shares, (a) all of the right, title and interest of the Estate in, to and under that certain One to Four Family Residential Contract (Resale) (the "Contract" between the Estate, as Seller, and Albert E. Magill and Jennifer T. Magill (collectively, the "Magills"), as Buyer dated effective August 25, 2008, and (b) all claims and causes of action of the Estate against the Magills pertaining in any way to the Contract and defenses of the Estate to any claims of the Magills pertaining in any way to the contract.

In their first issue, the Magills contend that appellees Watson and Livesay, as trustees of the William Watson, Jr. Trust and the Robin Watson Livesay Trust, did not have standing to bring a breach-of-contract claim against them. Specifically, the Magills argues that "the estate's assignment to appellees of the

4

estate's causes of action against appellants is void when no cause of action is filed by the estate or is pending at time of the assignment[.]"  The Magills further argue that, absent a valid assignment, only the executor of the estate has standing to bring the suit.

Standing is a component of subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445-46 (Tex. 1993). A plaintiff has standing to sue when it is personally aggrieved by the alleged wrong. *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996). A plaintiff may also have standing by assignment of a cause of action. *See State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 706 (Tex. 1996). A claim may be assigned except when such an assignment is invalid as against public policy. *Id.* at 707.

The five instances in which assigned causes action are void as against public police are as follows: (1) The assignment of an interest in an estate is void if used to contest a will. *Trevino v. Turcotte*, 564 S.W.2d 682, 690 (Tex. 1978); (2) The assignment of plaintiff's claim to a tortfeasor in settlement is void when tortfeasor asserts the claim against a joint tortfeasor. *Int'l Proteins Corp. v. Ralston-Purina Co.*, 744 S.W.2d 932, 934 (Tex. 1988); (3) "Mary Carter" agreements are void. *Elbaor v. Smith*, 845 S.W.2d 240, 250 (Tex. 1992); (4) The assignment of a defendant's claims against his insurer to the plaintiff is void under certain circumstances.  *Gandy*, 925 S.W.2d at 705; and (5) The assignment of client's

legal malpractice claim arising out of litigation is void. *Zuniga v. Groce, Locke, & Hebdon*, 878 S.W.2d 313, 318 (Tex. App.—San Antonio 1994, writ ref'd). The Magills do not contend that the assignment in this case falls within one of these prohibited categories.

To recover on an assigned cause of action, the party claiming the assigned rights must prove (1) a cause of action existed that was capable of assignment and (2) the cause was in fact assigned to the party seeking recovery. *Ceramic Tile Int'l Inc. v. Balusek*, 137 S.W.3d 722, 724 (Tex. App.—San Antonio 2004, no pet.); *Delaney v. Davis*, 81 S.W.3d 445, 448-49 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Texas Farmers Ins. Co. v. Gerbes By and Through Griffin Chiropractic Clinic*, 880 S.W.2d 215, 217 (Tex. App.—Fort Worth 1994, writ denied).

The Magills argue that there was no cause of action that existed and was capable of assignment because no lawsuit had yet been filed. In support, the Magills rely on section 12.014 of the Property Code, which provides:

> (a)   A judgment or a part of a judgment of a court of record or an interest in a cause of action on which suit has been filed may be sold, regardless of whether the judgment or cause of action is assignable in law or equity, if the transfer is in writing.
>
> (b)   A transfer under this section may be filed with the papers of the suit if the transfer is acknowledged or sworn to in the form and manner required by law for acknowledgement or swearing of deeds.
>
> (c)   If a transfer of a judgment is filed, the clerk shall record the transfer appropriately. If a transfer of a cause of action in which a judgment has not been rendered is filed, the clerk shall note and

briefly state the substance of the transfer on the court docket at the place where the suit is entered.

(d)     A transfer filed under this section is notice to and is binding on a person subsequently dealing with the judgment or cause of action.

TEX. PROP. CODE ANN. § 12.014 (Vernon 2004).

However, the purpose of the statute is to give parties dealing with a cause of action notice that it has been assigned and is not intended to affect the validity of any sale of a cause of action. *See Mallios v. Baker*, 11 S.W.3d 157, 171 (Tex. 2000) (J. Hecht, concurring) (citing *Mitchell, Gartner & Thompson v. Young*, 135 S.W.2d 308, 311 (Tex. Civ. App.—Fort Worth 1939, writ ref'd)). Section 12.014 was not intended thereby to prevent the acquisition of title to a judgment, cause of action, or an interest therein, either legal or equitable, in any other lawful manner. *HSBC Bank USA, N.A. v. Watson*, 377 S.W.3d 766, 776 (Tex. App.—Dallas, 2012 pet. filed.) (citing *Hunter v. B.E. Porter, Inc.*, 81 S.W.2d 774, 775 (Tex. Civ. App.—Dallas 1935, no writ); *Sw. Bell Tel. Co. v. Mktg. on Hold, Inc.*, 170 S.W.3d 814, 824–25 (Tex. App.—Corpus Christi 2005), rev'd on other grounds, 308 S.W.3d 909 (Tex. 2010) (holding "nothing in [section 12.014] precludes or invalidates the assignments at issue in this matter simply because they were made prior to the filing of suit")). Therefore, we conclude that section 12.014 has no bearing on the validity of the Estate's assignment to the trusts.

The Magills also rely on *Briargrove Shopping Center Joint Venture v. Vilar, Inc.*, 647 S.W.2d 329, 337–38 (Tex. App.—Houston [1st Dist.] 1982, no writ) for the proposition that a suit affecting the assignor's rights must be pending at the time an assignment is executed. However, that language in *Briargrove* is dicta because in that case it was undisputed that a suit had been filed before the assignment. *Id*. Furthermore, the case that *Briargrove* cites as authority involves the assignability of a wrongful death cause of action under the terms wrongful death statute at the time, thus is distinguishable. *See Lowe v. Emp'rs Cas. Co.*, 479 S.W.2d 383, 389–90 (Tex. Civ. App—Fort Worth 1972, no writ).

The Magill's position is based on the false premise that a "cause of action" applies only to claims that have already been filed in court. At common law, a "cause of action" ordinarily consists of two distinct and separate elements, the primary right and duty of the parties respectively and the wrongful act or omission violating it. *Mercantile Bank & Trust Co. v. Schuhart*, 115 Tex. 114, 277 S.W. 621, 623–24 (1925). A "cause of action" has also been said to consist of those facts entitling one to institute and maintain an action at law or in equity. *A.H. Belo Corp. v. Blanton*, 133 Tex. 391, 396, 129 S.W.2d 619, 621 (1939); *F.D.I.C. v. Bodin Concrete Co.*, 869 S.W.2d 372, 378 (Tex. App.—Dallas 1993, writ denied). Thus, a "cause of action" encompasses every essential fact that a plaintiff must

8

prove to obtain a judgment. *F.D.I.C.*, 869 S.W.2d at 378. Thus, by definition, a cause of action may exist before a suit is instituted.

Therefore, we hold that the fact that the Estate had not filed suit before it assigned its cause of action to the trusts is not a ground for concluding that the trustees lack standing. And, to the extent that the Magills are complaining that the trustees pleadings did not set forth the basis for their interest in the petition, we note that the Magills did not specially except to the petition on that ground, thus the issue is waived. TEX. R. CIV. P. 90.

Accordingly, we overrule issue one.

## LIQUIDATED DAMAGES

In issue two, the Magills contend that the following liquidated damage provision is unenforceable because it is an illegal penalty. The contract provided as follows:

> 18.D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent . . . ***will be liable to the other party for liquidated damages in an amount equal to the sum of (i) three times the amount of the earnest money***; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit. (Emphasis added).

We enforce a liquidated damages clause if (1) the harm caused by the breach is incapable or difficult of estimation, and (2) the amount of liquidated damages is a reasonable forecast of just compensation. *See Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991). An assertion that a liquidated damages provision constitutes

9

an unenforceable penalty is an affirmative defense, and the party asserting penalty bears the burden of proof. *Urban Television Network Corp. v. Liquidity Solutions*, 277 S.W.3d 917, 919 (Tex. App.—Dallas 2009, no pet.); *Fluid Concepts, Inc. v. DA Apts., LP*, 159 S.W.3d 226, 231 (Tex. App.—Dallas 2005, no pet.). Generally, that party must prove the amount of actual damages, if any, to demonstrate that "the actual loss was not an approximation of the stipulated sum." *Baker v. Int'l Record Syndicate, Inc.*, 812 S.W.2d 53, 55 (Tex. App.—Dallas 1991, no writ). If the amount stipulated in the liquidated damages clause is "shown to be disproportionate to actual damages," we should declare that the clause is a penalty and limit recovery to actual damages. *Johnson Eng'rs, Inc. v. Tri–Water Supply Corp.*, 582 S.W.2d 555, 557 (Tex. Civ. App.—Texarkana 1979, no writ); *see also* TEX. BUS. & COM. CODE ANN. § 2.718(a) (Vernon 2009) ("A term fixing unreasonably large liquidated damages is void as a penalty."). Whether a liquidated damages clause is an unenforceable penalty is a question of law for the court, but sometimes factual issues must be resolved before the court can decide the legal question. *See Phillips*, 820 S.W.2d at 788. For example, in *Phillips*, the Texas Supreme Court observed that "to show that a liquidated damages provision is unreasonable because the actual damages incurred were much less than the amount contracted for, a defendant may be required to prove what the actual damages were." *Id.*

The Magills, relying on *Phillips*, 820 S.W.2d at 788, contend that the liquidated damage provision is void on its face and no further evidence of the actual damages was required. We agree.

In *Phillips*, a partnership agreement contained the following liquidated damage provision in the event of a breach of trust by the general partner to the limited partner: "If the general partner breaches his trust hereunder, he shall pay to the limited partner as liquidated damages ten times the amount she loses as a result of such breaches of trust." *Id.* at 787. The supreme court granted an application for writ of error "to decide whether a contractual provision that requires payment of a multiple of actual damages for breach of trust is an unenforceable penalty[,]" and held as follows:

> The enforceability of the contractual provision in this case involves no fact issues. A contractual provision like the one here by which one party agrees to pay the other some multiple of actual damages for breach of the agreement does not meet either part of the legal test for an enforceable liquidated damages provision. It cannot meet the first prong of the test because the harm caused by the breach of the contract is not incapable or difficult of estimation. The provision assumes actual damages can and will be determined, indeed must be determined, before the prescribed multiplier can be applied. The provision cannot meet the second prong of test because, instead of attempting to forecast actual damages, it calls for them to be determined and then multiplied. A contractual provision like the one in this case is thus, on its face, an unenforceable penalty.

*Id.* at 789 (internal citations omitted).

11

Here, the breach triggering the liquidated damage provision is the "wrongful[] fail[ure] or refus[al] to sign a release acceptable to the escrow agent." However, the liquidated damage provision makes no attempt to quantify the actual damages that would be caused by a failure to release the earnest money. Instead, the provision merely assumes that the earnest money, which the parties have agreed will constitute actual damages for breach of the agreement in general, should be trebled and added to the earnest money in the event that the obligation to release the earnest money is breached.

The trustees argue that "it is only natural that the liquidated damages for which paragraph 18.d provides would be greater than [the earnest money] for which paragraph 15 provides, for the party entitled to the earnest money is forced to go through additional hoops it would not otherwise have had to go through to ultimately obtain a recovery." However, the damages suffered as a result of going through such "additional hoops," i.e., attorney's fees, interest, and costs, are already elements of damages that can be recovered in a suit to obtain the earnest money. Likewise, the $80,000 the trustees claim that they suffered as a result of selling the property at a lower purchase price is not damage caused by the failure to release the earnest money, but by the failure to close on the real estate transaction.

Thus, we conclude that, because the contract provision simply takes the value of the earnest money, which the parties have agreed represents the actual

12

damages caused by the breach of the agreement, and multiplies it times three if there is an additional breach of the obligation to turn over the earnest money, the provision is an unlawful penalty and does not attempt to forecast actual damages. This conclusion is supported by the comment promulgated by the Texas Real Estate Commission when it drafted the form upon which the clause is based, wherein the Commission stated that the purpose of the clause was to "provide for additional incentives for prompt release of the earnest money." 31 Tex. Reg. 1446, Comment on Amendment to 22 TEX. ADMIN. CODE § 537.28 (2008) (Tex. Real Estate Comm'n) (Standard Contract Form TREC No. 20-7).

We are not holding, however, that a contract can never provide liquidated damages for the failure to release earnest money. We hold only that the clause in this case, on its face, did not attempt to reasonably forecast a just compensation for a breach of the agreement to release the earnest money.

Accordingly, we sustain issue two.

## SUFFICIENCY OF THE EVIDENCE

In issue three, the Magills contend the trial court erred in denying their motion for directed verdict because there was no evidence that they wrongfully failed or refused to sign a release of the earnest money.

A complaint about the denial of a motion for directed verdict is the same as a challenge to the legal sufficiency of the evidence. *City of Keller v. Wilson*, 168

13

S.W.3d 802, 823 (Tex. 2005). Under this standard, we must view the evidence and inferences in the light most favorable to the jury's findings. *Id.* When, as here, an appellant attacks the legal sufficiency of an adverse finding on an issue for which it did not have the burden of proof, it must demonstrate that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Such a challenge will be sustained only when (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *see also City of Keller*, 168 S.W.3d at 810.

We have already held that recovery of treble the amount of the earnest money was unenforceable, thus the issue of whether there is sufficient evidence that the Magills wrongfully failed or refused to release the earnest money is irrelevant. However, to the extent that the Magills are also contesting the jury's finding them liable for breaching the agreement, we note that there is evidence that the Magills could have built a 5000 square foot house on the lot, but chose instead to terminate the contract because they could not get a variance to permit them to build their garage so that it encroached on the setback. Thus, the evidence is

legally sufficient to support the jury's finding that the Magill's breached the agreement, thus giving rise to damages in the amount of the earnest money.

We overrule issue three.

## CONCLUSION

Because section 18.D of the contract imposed an unlawful penalty, the trial court erred by awarding three times the earnest money, in addition to the earnest money, plus attorney's fees, interest, and costs. However, the evidence is legally sufficient to support an award of liquidated damages in the amount of the earnest money, plus attorney's fees, interest, and costs. Therefore, we reverse the judgment awarding the trustees "actual damages of $32,000.00, together with interest thereon at the rate of 6% per annum" and render judgment awarding the trustees "actual damages of $8,000.00, together with interest thereon at the rate of 6% per annum." We affirm the remaining portions of the judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

15