H. F. BANKER, Appellant,

v.

CITY OF GROVES, Appellee.

No. 6053.

Court of Civil Appeals of Texas.

Beaumont.

Oct. 4, 1956.

Rehearing Denied Nov. 28, 1956.

Rutan, Phares, Hall & Flowers, Port Arthur, for appellant.

Earl Black, Port Arthur, for appellee.

WALKER, Justice.

The appeal is from an order denying a temporary injunction. The subject matter of the suit consists of claims by appellant Banker founded on a contract dated May 22, 1947, between Mr. Banker and Jefferson County Water Control & Improvement District No. 1. This contract is discussed in our opinion reported sub nomine Banker v. Jefferson County Water Control & Improvement District No. 1, Tex.Civ.App., 277 S.W.2d 130. In 1954, the District was abolished and the appellee City of Groves succeeded to its rights and liabilities under the contract.

We held in the decisions just cited that the provision of the contract which required Mr. Banker's consent to connections made by the District to parts of a pipe line for transporting water was void. The action in which this decision was rendered was

one for damages, for breach of this provision or for conversion of the water lines. After our decision, Mr. Banker brought the present suit and in his petition prays, in substance, that the City, as the District's successor, be required either to comply with the consent provision just mentioned or be required to surrender the water lines. He also prayed for a temporary injunction restraining the City from making any more connections in violation of the provision requiring his consent to such connections, and it is from the order denying this prayer that the appeal has been taken.

From evidence adduced at the hearing of the prayer for temporary injunction, the trial court was authorized to find the facts to be as follows: When Mr. Banker made his contract with the District, he and some associates were preparing to, or were attempting to, sell to the public lots in a subdivision which they owned and which was called Lyndale. No further reference will be made to the associates since Mr. Banker seems to have been the principal actor of this group. Mr. Banker made the contract with the District, at least mainly and primarily, to have water available to the lots in Lyndale. It does not appear that he expected to use the water line for any other project or purpose of his own. After making the contract, Mr. Banker constructed the water line into Lyndale and this became known to persons who owned lots in a subdivision called Fairhaven, adjoining Lyndale on the west, and at the insistent request of these persons, Mr. Banker extended the water line from Lyndale into Fairhaven. This was done after the water line had been constructed into and within Lyndale.

The water line referred to above formed a continuous, that is, unbroken system, a part being in Lyndale and Fairhaven subdivisions and a part extending out of Lyndale to connect with the District's own water mains. The latter part was of 6 inch pipe and extended 1,300 feet from the District's water line to the north boundary of Lyndale and for 500 or 600 feet more within Lyndale to a point where 2 inch pipe connected with it, extending to lots in Lyndale and then westwards into Fairhaven. Mr. Banker estimated that there was about 4,000 feet of this 2 inch pipe in Fairhaven and that this part of the water line cost about $2.00 a foot to construct. He estimated that there was about 6,000 or 8,000 feet of 2 inch pipe in Lyndale and that this part of the water line also cost about $2.00 a foot to construct. These figures show that about two-thirds of the total water line was in Lyndale. Mr. Banker's estimate of the cost of the 6 inch line was more indefinite; he said that it was about $4.00 or $5.00 a foot, but he also said that the cost of the 1,300 feet outside of Lyndale was "right around $5,000."

Lyndale and Fairhaven were not in the District when the contract was made and for several years, four or five years said Mr. Banker, the District complied with the provision of the contract which required Mr. Banker's consent to connections made to those parts of the water lines outside of Lyndale. Eventually, however, the District extended its boundaries so as to include the water lines referred to above and all of Lyndale and Fairhaven subdivisions, and after this occurred and because of this the District refused to comply any longer with this provision of the contract; and the District made either 5 or 6 connections in Fairhaven in violation of this provision. Since the abolition of the District, the water lines and Lyndale and Fairhaven's subdivisions have been within the City, and the City, too, has consistently refused to comply with this provision and has made three connections to the 6 inch pipe outside of Lyndale in violation of this provision.

The purpose of the provision requiring Mr. Banker's consent to connections made to that part of the water line outside of Lyndale was to enable Mr. Banker to recoup his expense in constructing the water line, or that part thereof outside of Lyndale, for he owned nothing adjoining the water line except in Lyndale. However, Mr. Banker's testimony shows that the price of

a lot in Lyndale included some part of the expense of constructing the water line, at least, we infer, that part of the line adjacent to a particular lot; but the sale of Lyndale did not repay the cost of the line in Fairhaven. Mr. Banker testified, too, that Lyndale sales did not reimburse him for the part of the water line which extended from the District's own water line into Lyndale. However, during the years when the District complied with the provision requiring his consent to connections, he charged each person asking for his consent a sum of money, either $60 for each connection or for each lot owned by the applicant. 38 connections were made for which he secured payment in this way, and if for each he charged $60 he had received at least $2,280 from this source. All of these 38 connections were in Fairhaven, so of the cost of the line in Fairhaven, estimated by him to be about $8,000, he had received a little more than one-fourth.

At the time of the hearing, Mr. Banker had ceased to own any land in Lyndale, and he owned nothing in Fairhaven at that time. He owns no property served by the water line in suit.

Mr. Banker, immediately after making the contract, had bought an easement from R. L. Latimer on which to construct, and on which he did construct, the 1,300 feet of 6 inch line from the water line of the District to Lyndale. By instrument dated March 23, 1953, Mr. Banker reconveyed this easement to Mr. Latimer and purported to convey to Latimer the 1,300 feet of 6 inch line just mentioned. As we have stated, Mr. Banker estimated the cost of this part of the 6 inch line at "right around $5,000".

Within the limits of Lyndale and Fairhaven subdivisions, the water lines are on easements dedicated to the public.

Immediately after the water line was constructed, the District began to run water through it, and the District and its successor, the City, have since continued to do so. The water line is a part of the City's system for the distribution of water to its citizens just as said line had been a part of the District's water system; and the District and the City have exercised control over the line as a part of their water systems.

We hold that the trial court was authorized to deny the prayer for a temporary injunction under the facts just summarized.

■ In substance, the plaintiff prays, either for a specific performance of the provision requiring his consent to connections or for a complete rescission of the contract. The trial court could not have specifically enforced the provision, by forbidding connections without plaintiff's consent, without disregarding our holding that the provision was void. This disposes of one possible ground for a temporary injunction.

Plaintiff's right to a rescission is founded on the contention that performance of the provision requiring his consent was consideration for his construction of the line and that, this provision being void, only by a rescission could he prevent the loss of his property and its appropriation by the City. He assumes that his purported retention of title, made in the contract, was valid originally, and he says that it continued to be so despite the extension of the District's boundaries. In essence, the plaintiff's argument is, that the City as the District's successor must completely pay the agreed price for use of the water line or else must surrender the line. The only function a temporary injunction could perform under this branch of plaintiff's theory would be to protect the pipe in the water line from physical damage, and if the plaintiff showed no probable right to recover the pipe, he was not entitled to the temporary injunction to prevent connections to the pipe.

■ However, a rescission is not the only relief possibly available to the plaintiff and so need not be granted. For if a rescission would be inequitable, the trial court could deny one, though otherwise the

plaintiff would be entitled to one, and could instead award the plaintiff the money value of that which denial of rescission, in whole or in part, would deprive him of, if any such interest he proved. But we express no opinion, whether the plaintiff does or does not have any right or interest in the water line, except as below stated.

The facts summarized authorize a conclusion that a rescission of the contract, in whole or in part, would probably prove to be inequitable. *In the first place,* the plaintiff has received most of the agreed price charged by him for the use of the water line; the failure of consideration claimed by the plaintiff from the refusal to comply with the provision requiring his consent to connections is both partial and minor. This provision was complied with long enough to yield plaintiff at least $2,280. And plaintiff's main and immediate object in making the contract was to have water available to his lots in Lyndale, which he was offering for sale, and this object was accomplished. For the District accepted the water line, made it a part of its own system, and furnished water through it to persons in Lyndale, and this service was never interrupted, either by the District or by the City. During the time elapsing since the contract was made and while the District and City were performing this service, the plaintiff has ceased to own any property in Lyndale. *In the second place,* a rescission would require the City to make the pipe available to the plaintiff. For the water line in Lyndale and Fairhaven is on public easements, in which the plaintiff owns no interest, and it is also a part of the City's system for furnishing water to its citizens. Digging up these pipe would subject the City to expense and would necessarily interrupt the City's delivery of water to persons dependent upon the water line. And there were a substantial number of these people. Lyndale was a large subdivision, containing about 160 lots, and plaintiff consented to 38 connections in Fairhaven.

■ The facts summarized in our preliminary statement also authorize the conclusion that plaintiff has deprived himself of any right to insist on a complete rescission of the contract. *First, as regards the 1,300 feet of six inch pipe conveyed to Latimer:*—Whatever interest plaintiff may have had in this part of the water line vested in Latimer as the plaintiff's grantee, and if plaintiff did have something to convey, his insistence that the City procure his consent to connections to this part of the line is in conflict with the legal effect of his own conveyance. It would be Latimer's right, as owner, (assuming that he got something from plaintiff in addition to the easement) to determine what was to be done with his property. *Second, as regards Lyndale:*—The plaintiff presumably secured reimbursement, either for that part of the water line in this subdivision, or for that part of the water line adjacent to the lots, and if the latter part does not include the 500 or 600 feet of six inch pipe within Lyndale, this six inch pipe is the source of the water running to the lots through the rest of the water line. Purchasers of lots in Lyndale either paid for their water line, at least that part of said line adjacent to their lots, or else the payment by these purchasers did include the right to connect with the water line and have water come to them through this water line. Therefore the plaintiff has not shown himself entitled to rescind the contract as regards that part of the water line in Lyndale, for such a rescission would cause an interruption in the City's delivery of water to lots in Lyndale. As we have pointed out in the preliminary statement, about two-thirds of the water line is in Lyndale. *Third, as regards Fairhaven:*—The plaintiff was paid for his consent to 38 connections to this part of the water line. These 38 connections would seem to have the same effect on plaintiff's alleged right of rescission as do the connections made in Lyndale, and for similar reasons, and the plaintiff has shown no

more right to disturb the flow of water to these connections than to the connections in Lyndale. Furthermore, the evidence does not show that parts of the line in Fairhaven not adjacent to the lots of the 38 persons who procured plaintiff's consent to their connections could be dug up and delivered to the plaintiff without interrupting the flow of water to the connections made by these 38 persons, and this is consistent with the theory of the plaintiff's suit, which is for a complete rescission of the contract.

Under the circumstances, the trial court was authorized to conclude that plaintiff would probably show no absolute right to a rescission of the contract, either in whole or in part, and that if the plaintiff did prove that he owned some right in the water line and was entitled to have this right protected, he could be compensated by a money award to the extent stated above. All of this being so, the plaintiff was not entitled to a temporary injunction to prevent injury to property of his.

The order appealed from is therefore affirmed, since this conclusion adjudicates the other possible ground for a temporary injunction.