**Morris CANNAN, Appellant,**

v.

**Stewart VARN, d/b/a Varn Petroleum Company, Appellee.**

No. 1400.

Court of Civil Appeals of Texas, Corpus Christi.

Nov. 29, 1979.

Rehearing Denied Dec. 20, 1979.

Frederick R. Zlotucha, (on appeal only), Hernden, Brown & Campion, San Antonio, for appellant.

Toufic Nicolas, Nicolas & Morris, Corpus Christi, for appellee.

OPINION

YOUNG, Justice.

This appeal arose from two separate causes of action. The plaintiff alleged that the defendant breached an oil and gas drilling contract. The defendant then alleged a counterclaim which asserts that the plaintiff misrepresented material facts about the productive capability of a separate oil and gas venture in violation of the Federal Securities Act of 1933. Stewart Varn, d/b/a Varn Petroleum Company was plaintiff below and Morris Cannan was defendant. Based upon a jury verdict the trial court rendered judgment in favor of the plaintiff for $30,658.71 plus interest and costs against the defendant. Defendant Cannan appeals. We affirm.

Varn filed suit against Cannan for breach of a letter of agreement which purported to create contractual obligations by Cannan to drill an oil and gas well in Nueces County. Cannan answered that Varn prevented the performance of the contract and therefore he should be excused from performance.

Cannan also alleged that there was a failure of consideration regarding the Nueces County well (Flinn No. 1) in that part of the consideration for the drilling contract was the participation by Cannan in another drilling venture in Matagorda County (Newman Well No. 1) arranged by Varn. This well produced no oil or gas. Cannan claims that information regarding the Newman well was misrepresented to him by

Varn and that he never would have participated in this venture if he had known the true facts. According to Cannan this misrepresentation when viewed as a part of a letter of agreement amounts to a failure of consideration.

Appellant Cannan also filed a counterclaim which related principally to the second transaction between the parties, that involving the exploration of Newman No. 1. Cannan alleged the misrepresentation of material facts which occurred when Varn presented the offer to participate to Cannan. In the alternative, Cannan alleged a violation of the securities regulations in that his participation in the venture was obtained by untrue statements of material facts or an omission to state material facts.

A brief summary of the facts is as follows. The parties entered into a letter of agreement on December 22, 1974, for the drilling of Flinn No. 1, performance to be "on or about January 15, 1975, weather and other conditions beyond our (Cannan's) control permitting." On December 23, 1974, Varn paid Cannan in advance for costs in the amount of $48,350.00. Varn's witnesses at the trial said that Cannan was well aware of the need to drill this well as soon as possible in 1975 in order for Varn to receive intangible drilling cost deductions on the appellee's 1974 income tax return. As of February 27, 1975, drilling had not been commenced, although Varn had allegedly contacted Cannan or his agent some forty-five times requesting immediate performance. Cannan claimed that due to inclement weather conditions, a shortage of men, and a lack of equipment, he could not begin drilling on or about January 15, 1975. Varn contended that he had no other choice but to move Cannan's equipment off the well site and to employ another drilling company to drill the Flinn No. 1.

Newman No. 1 was a transaction involving the exploration of a previously explored drilling endeavor. Based on geological reports, well logs, and other information, Varn believed that the well contained a large reservoir of natural gas and a pool of oil which were not exploited earlier due to high costs. Varn offered a ⅛ working interest in the well to Cannan who, after reviewing all the data, accepted participation and paid $20,000.00 therefor.

Drilling for oil began on Newman No. 1 but was stopped when the strata was discovered to be cut by a fault. This foreclosed the possibility of the production of oil. Exploration for gas was also thwarted when drilling reports from a previous driller were found which showed a prior perforation of the area believed to contain natural gas. The report had never been filed with the Texas Railroad Commission, whose reports should reflect all drilling information on wells.

The trial on the original claim of breach and the counterclaim for misrepresentation went to the jury on three special issues. The first special issue asked about performance "on or about January 15, 1975"; the second special issue inquired whether any misrepresentation or omission of a material fact had occurred relative to Newman No. 1; and the third special issue concerned damages for the misrepresentation relative to the Newman No. 1. The jury answered all issues favorably to Varn, and a judgment was so entered against Cannan.

Appellant brings forward 17 points of error. Points 1 through 7 concern misrepresentation about the Newman No. 1. Points 8 through 17 concern the drilling contract breach regarding the Flinn No. 1.

The basic contention of appellant raised by points of error 1, 2, 4 and 5 is that appellant was entitled to judgment as a matter of law due to the failure of appellee to register the oil and gas offering as a security under the Securities Act of 1933. The Securities Act of 1933 requires any person who sells securities [as defined under 15 U.S.C.A. § 77b(1)] through the mail or by any means of communication in interstate commerce to file a registration of those securities with the Commission. 15 U.S.C.A. § 77e. On its face, appellant's contention appears to be a valid one. Appellee did sell by mail an oil and gas interest which appears to qualify as a security. 15 U.S.C.A. § 77b(1). In order to recover under

these sections of the Securities Act of 1933, however, the appellant must first meet the procedural requirements of alleging a cause of action in his pleadings under Rules 45 and 47, T.R.C.P.

In reviewing the Second Amended Answer and Counterclaim (in particular, the Counterclaim), we notice that appellant makes two claims. First, appellant claims that appellee misrepresented information concerning the Matagorda County well (Newman No. 1) to his damage. In the alternative, appellant claims relief based on either the fraudulent misrepresentation or omission of material facts as to the potential success of the Newman No. 1 in violation of 15 U.S.C.A. § 77q.

The Counterclaim does not set out a cause of action based on a violation of 15 U.S.C.A. §§ 77e and 77f; i. e., the failure to register the oil and gas interest as a security. Appellant cannot on appeal raise a new cause of action and expect this reviewing court to grant him relief on a new and independent cause of action that never has been pled. See Rule 301, T.R.C.P.

Nor was a cause of action about failure to register the oil and gas interest as a security tried by implied consent under Rule 67, T.R.C.P. On several occasions at the trial appellant's counsel did attempt to raise the registration issue in cross-examination. On every occasion, however, counsel for the appellee objected to the introduction of testimony that was not evidence supporting a cause of action set forth in Defendant's Second Amended Answer and Counterclaim.

■ Rule 67 permits the trial of certain issues by the court even though they are not set out in the pleadings. *Barry v. Patterson*, 225 S.W.2d 864, 869 (Tex.Civ.App.—Fort Worth 1949, no writ). But if objection is made to the introduction of such evidence not supported by the pleadings, then there can be no trial by consent. *Shaw v. Tyler Bank & Trust Company*, 285 S.W.2d 782, 790 (Tex.Civ.App.—Texarkana 1955, writ ref'd n. r. e.). Such is the situation in the case here. All efforts to try by consent the cause of action for failure to register securi-ties failed because proper objection was made at the trial. Appellants points 1, 2, 4 and 5 are overruled.

■ In points 3 and 6 the appellant attacks the judgment on the grounds that there was a violation of the security regulations due to the misrepresentation and/or omission of a material fact which would entitle the appellant to a judgment as a matter of law. In point of error 3 appellant alleges that he was not given all the facts about the oil and gas interest and that the information he did receive was misrepresented. Rescission, according to the appellant, is the required remedy. In point of error 6 appellant argues that he is also entitled to damages because of the misrepresentation and/or omission and the breach of the appellee's duty to reasonably examine the information to determine its accuracy.

In order to resolve these points, we must determine whether the evidence is legally sufficient to sustain that part of the jury verdict pertinent to the appellant's complaints. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965). Appellee Varn approached the appellant, a man who had been in the oil and gas business for many years, with an offer to participate in a joint oil and gas venture. The venture appeared to Varn to have many financial benefits. The geological data, well logs, and other information all indicated the presence of a vast reservoir of natural gas and the possibility of an oil pool. Most of this favorable data was compiled when the well was previously drilled by another company. At that time it was economically unfeasible to have further explored the well in order to determine its reservoirs.

After evaluating all the available data, appellee decided that there was a good possibility for return on the investment. Appellee then supplied the appellant with all the data upon which the appellee had made his decision. At that point, appellant agreed to participate.

After the drilling commenced, the drilling was cut by a surprise fault at the level where the oil pool should have been. The

exploration for the natural gas also proved to be futile. Appellee learned that the company who had drilled before had perforated the sands at various levels. This information had not been recorded on any report filed with the Texas Railroad Commission. The previous perforation of the sands meant that there was little or no natural gas to be extracted in this venture.

The question of whether appellee Varn gave all the material facts or misrepresented any of the information concerning the well was squarely put before the jury by Special Issue No. 2.[1] The jury refused to find that the appellee gave false information to Cannan or concealed any material information from him. In reviewing the evidence, we find that there is ample evidence to support the jury's answer. Appellant's points 3 and 6 are overruled.

■ Appellant's point 7 complains of the submission of a question of law to the jury in Special Issue No. 2 regarding the offer and sale of a security interest. It is important to note that no objection about this special issue was made to the trial court by the appellant before the submission of the charge to the jury. Nor was a proposed issue on the question of the violation of

securities law tendered to the court. Under Rule 279, T.R.C.P., the party who has the burden of proof in the case should tender to the court a substantially correct proposed issue.

But, the issue of whether the offering should have been registered never was put before the trial court by the pleadings. No issue on that cause of action could have been submitted by the trial court properly.

Special Issue No. 2 that the trial court did submit embodied the controlling issue in the counterclaim, that of whether the appellee made false representations or concealed material information about the well with the intent to obtain appellant's participation in the venture. This special issue correctly embodies 15 U.S.C.A. § 77q(a)(2),[2] which is the cause of action alternatively set forth in the pleadings. Appellant's point 7 is overruled.

All of which brings us to appellant's remaining ten points of error which assert mistakes by the trial court involving the suit brought by the appellee for breach of contract concerning the Flinn No. 1. One special issue was submitted to the jury in order to determine whether a breach of performance occurred.[3] Appellant at the

---

1. "Special Issue No. 2
   Do you find from a preponderance of the evidence that, prior to Cannan's agreeing to buy a ⅛th working interest in the Newman No. 1 well in Matagorda County, the representative of Varn Petroleum made false representations to Morris Cannan as to material facts or geological information or concealed material information about said well with the intent of obtaining his agreement to buy such interest?
      Answer 'Yes' or 'No'.
      Answer:  No  "

2. "Section 77q. Fraudulent interstate transactions
   (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
   * * *"
   "(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
   * * *"

3. "Special Issue No. 1
   Do you find from a preponderance of the evidence that Morris Cannan failed to provide the drilling of the Flinn No. 1 well and furnishing its equipment 'on or about January· 15, 1975, weather and other conditions beyond our control permitting,' as provided in his letter agreement with Varn Petroleum Company dated December 20, 1974?
      Answer Yes or No.
      Answer:  Yes 
   In reaching your answer to the preceding Special Issue you are to determine the intention of the parties from the words used, and the circumstances surrounding ·the making of the agreement.
   · You are further instructed in answering Special Issue No. 1 that the phrase 'weather and other conditions beyond our control permitting' as used in the letter agreement of December 20, 1974, means weather and conditions that would permit a reasonably prudent drilling contractor to perform under the same or similar circumstances."

time of trial made several objections to this special issue and proposed his own special issue in its place,[4] which submission was denied by the trial court. Appellant's points 8 through 17 apply to the submitted special issue and the requested special issue.

■ Points 8 and 9 are based on the proposition that the jury should have had the opportunity to decide whether appellee Varn wrongfully prevented the performance of the contract by moving Cannan's drilling equipment off the Flinn lease. The trial court correctly refused to grant appellant a take nothing judgment in this regard and correctly refused to submit an issue which raised this question separately. The proper question before the jury was whether appellant breached the contract by not performing "on or about January 15, 1975"; the question was not whether appellee breached the contract by moving the equipment off the Flinn lease. Points 8 and 9 are overruled.

■ Point 10 is a "no evidence" point. Applying the rules in accordance with *Garza v. Alviar*, supra, we have reviewed the record and we hold that the evidence is legally sufficient to support the jury's answer to Special Issue No. 1. A summary of that evidence has been heretofore set out by us in this opinion. Point 10 is overruled.

Points 11 and 12 raise the contention that evidence was lacking to establish that time was of the essence in the performance of the drilling contract. We have held that normally time is not of the essence unless the parties expressly contract that it is or the subject matter, purpose, or circumstances surrounding the contract so dictate. *Laredo Hides Co., Inc. v. H & H Meat Products Co., Inc.*, 513 S.W.2d 210 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.).

■ The contract was somewhat ambiguous in that regard in that the time for

performance was specified as "on or about January 15, 1975, weather and other conditions beyond our control permitting." The trial court was therefore correct in submitting the question of time of performance in the form of reasonable time of performance dependent upon circumstances surrounding the case. *Houston County v. Leo L. Landauer & Associates, Inc.*, 424 S.W.2d 458 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.). Points 11 and 12 are overruled.

Appellant in point 13 argues that the jury should have considered the circumstances surrounding both the "making" and the "performance" of the agreement. The trial court's instruction to Special Issue No. 1 used the words "weather and conditions that would permit a reasonably prudent drilling contractor to perform under the same or similar circumstances." This instruction clearly directs the jury to consider circumstances surrounding the performance of the agreement. Point 13 is overruled.

Appellant's point 14 complains that Special Issue No. 1 did not submit a controlling issue, and point 16 complains of the trial court's failure to submit appellant's proposed controlling issue. The ultimate issue to be decided by the jury in this case was whether a breach of the drilling contract occurred on or about January 15, 1975. This is the identical issue that was broadly submitted to the jury in Special Issue No. 1, and was therefore proper.

■ Rule 277, T.R.C.P., permits the trial court to submit broad special issues to the jury. *State v. Norris*, 550 S.W.2d 386 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.). The reviewing court will not reverse a judgment solely on the grounds that a special issue is general or multifarious. *Shasteen v. Mid-Continent Refrigerator Co.*, 517 S.W.2d 437 (Tex.Civ.App.—Dallas 1974, writ ref'd n. r. e.). Even though the trial court may have included other facts in Special Issue No. 1, there remains only one

4. "Requested Special Issue No. 1
Do you find from a preponderance of the evidence that Morris Cannan did those reasonably necessary acts to drill the Flinn No. 1 well subject to weather and other conditions beyond

his control permitting until such undertaking was stopped by Stewart Varn?
Answer 'Yes' or 'No'.
We, the jury, answer: _____."

controlling issue, that of whether a breach occurred on or about January 15, 1975. See *Crawford Chevrolet, Inc. v. McLarty*, 519 S.W.2d 656, 666 (Tex.Civ.App.—Amarillo 1975, no writ). Points 14 and 16 are overruled.

■ There was no objection made before the submission of Special Issue No. 1 on the grounds that the issue "failed to present an appropriate and proper chronological reference regarding the permissible period of performance" as outlined in point of error 15. If counsel does not raise the objection at the time of trial, he cannot successfully raise the point as error on appeal. Rules 272 and 274, T.R.C.P. Appellant's point 15 is overruled.

■ In point of error 17 appellant complains that Special Issue No. 1 requires the jury to construe the contract and to determine a question of law. The jury was not presented with the construction of the contract but rather the ascertainment of whether there was a breach of the contract on or about January 15, 1975. The contract, even though allowing for some variation, was clear in that it did specify the time for performance. The jury's duty was to decide the factual question whether performance occurred within that time. Appellant's point 17 is overruled.

The judgment of the trial court is affirmed.

NYE, C. J., not participating.