**Ruth SKAGGS as Independent Executrix for the Estate of Jack Skaggs, et al., Appellant,**

**v.**

**Tommy GUERRA and R.R. Guerra, Jr., Independent Executors for the Estate of R.R. Guerra, Appellee.**

No. 13-84-078-CV.

Court of Appeals of Texas, Corpus Christi.

June 13, 1985.

Rehearing Denied Aug. 30, 1985.

John Skaggs, Corpus Christi, for appellant.

Neal King, Mission, Edward Rodriguez, Brownsville, Hector Villarreal, Edinburg, for appellee.

Before NYE, C.J., and UTTER, KENNEDY, SEERDEN, BENAVIDES, DORSEY and BISSETT, JJ.

## OPINION

PER CURIAM.

This is an appeal from a judgment cancelling a deed executed in consideration for legal services rendered pursuant to a contingency fee contract. Appellees are Independent Executors of the estate of R.R. (Ruben) Guerra, Deceased. Ruben Guerra had employed the law firm of Carter, Stiernberg, Skaggs & Koppel, from whom appellants' interest succeeds, to represent him in the dissolution of M. Guerra and Son, a partnership. In return for the legal services, appellants were assigned a deed entitling them to an undivided seven per cent interest in all the property to be received by Ruben Guerra upon dissolution of the partnership or final settlement. Appellants did not fully perform the contract of employment, but did file the deed. Appellees brought this suit seeking a declaratory judgment that the deed is void.

The five general partners in the M. Guerra and Son partnership were: Ruben Guerra; Virgil Guerra; Joe Guerra; Horace Guerra; and M.A. Guerra. Virginia Jefferies was a limited partner. The primary asset held by the partnership was approximately 72,000 acres of ranch land in Starr and Jim Hogg Counties. Differences arose between the partners; some wanted to sell their interests but others did not. Ruben Guerra, who occupied some 13,000 acres of partnership land known as "Rancho Nuevo," did not want to sell and sought "Rancho Nuevo" to be partitioned to him as his pro-rata share of the ranch lands. All of the general partners had incurred substantial debts to the partnership, which were treated as "internal debts." In August of 1968, Virgil and Joe Guerra conveyed their undivided partnership interests to Clinton Manges, reserving their respective partnership interests in an undivided one-half of the minerals in the partnership properties. Thereafter, Manges and Virgil Guerra petitioned the district court for the appointment of a receiver in order to partition the partnership properties. The requested appointment was vigorously contested by appellants on behalf of Ruben Guerra. The trial court made the requested appointment. That judgment was appealed by Ruben Guerra, but it was affirmed. *See, M. Guerra and Son v. Manges,* 442 S.W.2d 441 (Tex.Civ.App.—Waco 1969, writ dism'd).

The appellants' representation of Ruben Guerra was governed by a letter agreement dated October 7, 1968 which reads as follows:

Gentlemen:

At the present time the undersigned are general partners in a limited partnership known as M. Guerra and Son. Certain disputes have arisen between the partners and certain outsiders which is the subject matter of certain pending litigation in Hidalgo County, Texas, and Goliad County, Texas, and a variety of other reasons exist which make it necessary in our opinion to dissolve the M. Guerra and Son partnership.

We have previously employed you to . . . represent us generally in any way necessary and to take any action which you may deem advisable on our behalf to bring about a dissolution of the M. Guerra and Son partnership and a distribution and partition to us of our pro rata share of the partnership assets or in the alternative, to obtain for each of us a settlement of such partnership interests which each of us may consider to be satisfactory.

\*　　\*　　\*　　\*　　\*　　\*

In return for legal services rendered and to be rendered by you as attorneys . . . in regard to all matters set forth herein until final conclusion of such matters to our satisfaction, each of us has this date assigned to you and by this agreement assigns to you an undivided seven (7%) per cent interest in and to all properties which each of us may hereafter receive from the M. Guerra and Son limited partnership upon dissolution or final settlement.

It is understood that the foregoing assignment constitutes payment in full to you . . . for such services as herein set

forth and that we will not owe you anything for attorneys services ... unless and until we obtain such final partition and distribution or (sic) such final settlement.

By a deed dated October 9, 1968, Ruben Guerra conveyed to appellants' law firm a undivided 7% interest in and to "all properties, real, personal and mixed which I, my family or any of my heirs or assigns may hereafter receive by reason of any interest in the limited partnership known as M. Guerra and Son...."

For the next two years, appellants performed significant legal services on behalf of Ruben Guerra. On February 27, 1970, a settlement agreement was reached between Manges and Ruben Guerra. Among other things, it was agreed that Ruben Guerra would receive Rancho Nuevo as his pro-rata share of M. Guerra and Son's ranch lands together with one-half of the minerals thereunder, including the executive rights on such minerals; and his proportionate undivided interest in one-half the minerals under the remaining ranch lands of M. Guerra & Son.

In December of 1970, appellant began to represent Manges in legal matters unrelated to the partnership litigation and dispute. By February of 1971, Manges had reached separate agreements with each of the other partners by which he would purchase much of the partnership's ranch land (approximately 40,000 acres) except for three tracts, one being Rancho Nuevo. On March 16 and August 20, 1971, Ruben Guerra received deeds to the surface of Rancho Nuevo and a mineral deed for half the mineral rights thereunder with executive rights. At this point, all that remained to be done was the preparation of an accounting and a Receiver's Final Report, which was necessary to close out the receivership. As late as October of 1972, the Receiver's accountants were still preparing the accounting.

In late summer of 1972, some of the partners obtained a copy of a proposed receiver's final accounting and report which revealed that there were insufficient funds on hand to pay existing internal and external partnership debts. The report suggested that an undivided one-half of the partnership's mineral interests be sold to Manges for $300,000, the amount of the deficit (admittedly a bargain price), to provide money for the payment of the debts. Ruben Guerra noted that Manges had previously acquired the partnership interest of M.A. Guerra by assuming M.A.'s debt to the partnership, which was $568,000. Manges had not paid this indebtedness to the partnership. Ruben was outraged at the proposed sale and argued that had Manges actually paid M.A.'s debt there would be no need to sell any partnership assets.

In light of this proposed sale, Skaggs informed the Guerras that it might be advisable "from a strategic point of view" to undertake the disqualification of the trial judge in the receivership suit, Judge O.P. Carrillo, as he felt that Judge Carrillo would follow the receiver's recommendation to sell the mineral interests. However, Skaggs told the Guerras that he could not undertake the action because of a possible conflict of interest arising from his representation of Manges before Judge Carrillo on other matters. However, Skaggs recommended the employment of another attorney and offered to help to secure his services. The Guerras were convinced that a corrupt relationship existed between Manges, Judge Carrillo, and the receiver. There is ample evidence in the record which shows their fears were well founded. The Guerras did not accept Skaggs' offer to help obtain another attorney to proceed with the proposed disqualification.

By early October of 1972, Ruben Guerra had become dissatisfied with appellants' representation because of the refusal to attempt to disqualify Judge Carrillo in the receivership case, so he contacted Garland Smith, an attorney. He told Smith that Skaggs had been discharged because he had not been able to effect a settlement. Smith then dictated a letter to Skaggs specifically and appellants generally. The

**54**

body of the letter consisted of a single paragraph which stated that:

Since you have advised me that you are not in a position to proceed further against Clinton Manges in the above matter, I have employed other counsel to represent me therein.

This letter was dated October 13, 1972 and was signed by Ruben Guerra. Upon receipt of the letter, Jack Skaggs considered himself discharged. Appellants performed no further legal services for either Ruben Guerra or the Guerras. At the same time, Ruben Guerra believed that Skaggs had "quit" representing him in the partition of the M. Guerra & Son properties and in the dissolution of the partnership. Appellants filed the deed on October 27, 1972.

The receiver filed the proposed final accounting and report in November of 1972. Smith thereafter represented appellees successfully; Judge Carrillo was disqualified on May 21, 1973 effective February 1, 1971, and a final judgment was rendered in the receivership suit on June 11, 1974, which carried out and enforced the terms and conditions of the settlement agreement between the Guerras and Manges which Skaggs had negotiated. *See, Manges v. Guerra,* 673 S.W.2d 180 (Tex.1984). The mineral interests which Manges had attempted to buy were not sold to him. The market value of the properties which were finally partitioned to the Guerras was claimed to be in excess of $15,000,000. The Guerras paid Smith $24,262.01 for his services. This lawsuit was initially filed by Ruben Guerra on June 14, 1974, seeking recovery of all advance payments to appellants as well as a declaratory judgment that the deed was void.

Appellants filed a cross-claim seeking both an accounting and a declaratory judgment that they are the owners of the contested property. Appellants did tender to appellees the amount of attorney's fees which had been paid to Smith.

The jury, in the three special issues submitted to them, found: 1) that appellants, due to no fault of Ruben Guerra, failed to perform the contract of employment of Oc-

tober 7, 1968; 2) that appellants were paid $17,500.00 for work done under the contract of employment; and 3) that the reasonable value of the legal services rendered by appellants' trial attorneys during this action was "none."

■ In their tenth point of error appellants contend that the jury finding to Issue One was not dispositive of the issues in this case, and was legally insufficient to support the judgment of cancellation. We agree. Since the contract was not fully performed, the *preliminary* inquiry should have focused on which of the parties was at fault for the failure to perform. However, the jury's affirmative finding to Issue One established only that appellees were not barred from recovery by wrongful conduct of their own. While we recognize that TEX.R.CIV.PROC. 277 and 279 allow broad submissions, we think that this charge did not fairly present the controlling issue of the case, which is whether appellants were legally excused from furnishing legal services to Ruben Guerra subsequent to October 13, 1972.

Although appellees nominally brought this suit to cancel the deed, the trial court's judgment effectively cancelled the underlying employment contract as well. Since it is appellees who seek to avoid the contract, they must bear the burden of proving their own case. *See Frye v. Appleby Water Supply Corporation,* 608 S.W.2d 798 (Tex. Civ.App.—Tyler 1980, writ ref'd n.r.e.); *Howell v. Kelly,* 534 S.W.2d 737 (Tex.Civ. App.—Houston [1st Dist.] 1976, no writ).

Appellees failed to obtain jury findings which would establish their entitlement to cancellation of the deed. While the answer to Issue One may have established that appellees were not barred from obtaining cancellation because of their own wrongful acts, it did not establish that appellees were *entitled* to cancellation because of appellants' wrongful material breach of contract. The jury finding that appellants failed to perform the contract of employment due to no fault of Ruben Guerra does not necessarily establish culpability (for the failure to perform) on the part of appel-

lants. Another appellate court has held that a negative jury finding to an inquiry whether a client discharged her attorney without just cause "does not constitute a finding that the client discharged her attorney *with* just cause." [Emphasis added.] *Howell,* 534 S.W.2d at 739.

Under Rule 279, the party who has the burden of proof in a case should tender to the court a substantially correct proposed issue. *Cannan v. Varn,* 591 S.W.2d 583 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). The trial court is required to submit the controlling issues raised by written pleadings and the evidence. *Line Enterprises Inc. v. Hooks & Matteson Enterprise, Inc.,* 659 S.W.2d 113 (Tex.App.—Amarillo 1983, no writ). It is the plaintiff's burden to see that all essential elements of his cause of action are submitted to the jury, or to object to the fact that the case was submitted to the jury in such a manner that an answer on an essential element would be prevented. *Hopkins v. Standard Fire Insurance Company,* 554 S.W.2d 270 (Tex.Civ.App.—Houston, [1st Dist.] 1977, no writ).

Even if Issue One *had* established that the contract was not performed because of the fault of appellants, the answer would not necessarily establish appellees' unconditional entitlement to recovery. We have examined analogous cases from owner-contractor disputes where substantial performance was an issue; that authority has established that a party may recover on a completed building or construction contract even if he is able to prove no more than substantial performance of the contract. It follows that even where the jury finds that one party *failed* to perform a contract in a good and workmanlike manner, there is nothing inconsistent about a further jury finding that the same party has "substantially performed." *Dietz Memorial Co. v. Texas Steel Building Co.,* 578 S.W.2d 872 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.); *Warren v. Denison,* 563 S.W.2d 299 (Tex.Civ.App.—Amarillo 1978 no writ). Similarly, a party who has acted in good faith and has substantially performed may recover notwithstanding slight deviations from the contract. *BPR Construction & Engineering, Inc. v. Rivers,* 608 S.W.2d 248 (Tex.Civ.App.—Dallas 1980 writ ref'd n.r.e.); *See Tex-Craft Builders, Inc. v. Allied Constructors of Houston, Inc.,* 465 S.W.2d 786 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.) for a discussion of equitable principles implicit in "substantial performance" of a building contract. And it has been held that whether a party delivered "proper performance" under a contract is *immaterial* if the jury has found "substantial performance" of the contract. *D.C. Edwards & Company v. Fisher,* 610 S.W.2d 546 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.).

The only benefits and properties that Skaggs & Koppel did not obtain for Ruben Guerra were 1) partition deeds which conveyed to him, individually, his interests in other property owned by the partnership, including a Goliad County tract of land and town lots in Roma and Rio Grande City; 2) his undivided interest in one-half of the minerals in the remainder of the 72,000 acres of ranch land; and 3) a judgment which dissolved the partnership of M. Guerra and Son.

Some inquiry into the sufficiency of appellants' performance should have been given to the jury. Appellant did request a special issue inquiring whether certain results obtained by their efforts constituted substantial performance of the employment agreement, and the trial court's refusal to submit the issue is before us as appellants' ninth point of error. We think neither cause of action will be established until the trial court submits a jury issue inquiring whether appellants substantially performed the contract. *See Kleiner v. Eubank,* 358 S.W.2d 902 (Tex.Civ.App.—Austin, 1962, writ ref'd n.r.e.). To find that appellees sustained their burden of proving their case through the answer to Issue One, we would have to infer also that the jury found that the failure to perform the contract was *appellants'* fault, and that the extent of appellants' performance was not substantial enough to invoke equitable con-

siderations involving forfeiture and unjust enrichment. *See C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191 (Tex.1966); *Hopkins*, 554 S.W.2d at 273.

This suit was brought in *equity*, in effect to cancel a contract that was no longer wholly executory. The consideration involved was an indivisible deed to real estate—not, as in many analogous fact situations, a fee which may be measured (or divided) in dollars. Because we lack proper jury answers, we are unable to determine, without improperly interpreting the facts ourselves, whether inequity or unjust enrichment resulted from this equitable proceeding and judgment. This case was tried on the question of *fault;* we hold that the previously cited legal and equitable principles require that it be tried additionally on the issue of *performance.* Consequently, and clearly in the interest of justice, we remand this case to be fully developed on the theories discussed. *United States Fire Insurance Company v. Carter*, 473 S.W.2d 2 (Tex.1971).

In their brief, appellants argued their first six points of error under three subpoints of error. In their first subpoint appellants contend that appellees received valuable benefits because of appellants' services, and that by accepting the benefits from the services, appellees have waived their right to cancel the contract. This argument misplaces the focus of our scrutiny. Under the peculiar facts of our case, appellants received a valuable, indivisible deed without completing their promise. We have held that the extent of appellant's performance must be examined before we can find that they may enforce the contract at all. Appellees have no way of returning the services rendered by appellants and, as appellants chose not to pursue recovery under quantum meruit, appellees have no way of estimating the monetary worth of appellants' service.

In their second sub-point appellants argue that appellees' failure "to tender or make restitution of any of the benefits, monies or services" received from appellants prohibits appellees from prevailing in an equitable proceeding. We first draw an analogy with rescission cases which absolve a party from offering restoration of consideration where a defrauded party's inability to .make restoration arose from the wrongful conduct of the defrauding party. *See Turner v. Houston Agricultural Credit Corporation*, 601 S.W.2d 61 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.); *Douglas v. Neill*, 545 S.W.2d 903 (Tex.Civ.App.—Texarkana 1977, writ ref'd n.r.e.). There is at least a fact question on whether the same equitable principles apply here. Appellees, having undergone extraordinary expense themselves, are not bound by equity to restoration when appellants have adduced no evidence of the value of their services and even chose not to request issues on quantum meruit. We note, in addition, that if the parties have acted in good faith, it is within the power of the trial court to require an equitable restoration of benefits by its judgment. *Texas Company v. State*, 281 S.W.2d 83 (Tex.1955); *Sudderth v. Howard*, 560 S.W.2d 511 (Tex.Civ.App.—Amarillo 1977 writ ref'd n.r.e.).

In their third sub-point of error appellants contend that since appellees were entitled to damages at law (measured by the cost of employing other counsel) they were not entitled to an equitable remedy. It is not at all clear, however, that appellee's cost of employing other counsel is the proper measure of the total damages they suffered. It has been noted that if damages, as well as rescission, are essential to accomplish full justice, they will both be allowed. *Atkins v. Beasley*, 544 S.W.2d 505 (Tex.Civ.App.—Waco 1976 no writ). Or, if rescission would be inequitable, the trial court may instead award a deserving plaintiff money damages. *Banker v. City of Groves*, 295 S.W.2d 548 (Tex.Civ.App.—Beaumont 1956 writ ref'd n.r.e.). Appellants' first six points of error are overruled.

In their seventh and eighth points of error, appellants contend that appellees are estopped from arguing that a settlement was not obtained and that the contract was

not completed; we construe appellants' eleventh, twelfth, and thirteenth points of error as both direct and oblique challenges to the evidence supporting the jury finding to Issue One; and in their fourteenth point of error, appellants contend that the trial court erred by refusing to submit special issues inquiring whether appellees prevented appellants from performing the employment contract. In light of our previous discussion, none of the above points of error present *controlling* issues, and therefore need not be considered. TEX.R. CIV.P. 451. Appellants' seventh, eighth, and eleventh through fourteenth points of error are overruled.

Appellants also contend that the trial court erred in rendering judgment that appellees recover $15,000, plus interest thereon, for the reason that there was no evidence to support the jury's answer to Special Issue Two. We agree.

On the same date borne by the employment contract, appellants and M. Guerra and Son partnership entered into a separate contract which provided for a fee of $10,000.00 to appellants in return for legal services rendered on behalf of the partnership in pending litigation in Hidalgo and Goliad Counties. There was evidence that appellants had received periodic payments under the contract from Ruben and M.A. Guerra by checks written on the M. Guerra and Son account. There was also evidence that appellants had been paid $7,500.00 by the partnership to pay out-of-pocket expenses.

There was no evidence that any cash payment was made to appellants for legal services rendered under their October 7, 1968, contract with Ruben Guerra. The evidence established only that such payments were made for services rendered to the partnership. None of these payments were to be applied to any fees owed personally by Ruben Guerra. There is no evidence to support either the jury's answer to Issue Two or the judgment of the court, based upon that answer, that Ruben Guerra recover $15,000 plus interest from appellants.

Appellants also challenge the evidence to support the jury's answer of "none" to Issue Three, which inquired as to the reasonable value (in dollars and cents) of the legal services rendered by Jones, Lewis & Pettitt in their representation of appellants during the preparation and trial of the cause.

The trial court properly instructed the jury on the factors to be considered in answering the issue. Raphael Flores, an attorney, addressed those factors when he testified, and further told the jury that, in his opinion, the reasonable value of the legal services rendered by Jones, Lewis & Petitt in this cause is a "one-third contingent fee." Ramon Garcia, an attorney, testified that, in his opinion, the reasonable value of such legal services is $750,000.

The testimony of Flores and Garcia was uncontroverted, and was the only evidence presented on the issue of the value of such legal services. Generally, in such a state of the record, the judgment would mandate an award of attorney's fees. However, under the circumstances here presented, we decline to reverse the judgment on the ground of "no evidence" and render judgment for a recovery of $750,000 for the value of such legal services. The record before us will not permit this Court to render such a judgment. This is so, even though the jury was instructed to answer the issue in "dollars and cents, if any," which would render immaterial the testimony relating to the one-third contingent fee, and leave standing the $750,000.00 for the legal services, which was the only evidence relating to the issue as submitted. We do not consider that *Yarbrough v. Booher*, 141 Tex. 420, 174 S.W.2d 47 (1943) requires a reversal and rendition for $750,000 on this issue. However, we do agree that the jury's answer to Issue Three and the judgment based thereon, is against the great weight and preponderance of the evidence. Therefore, the judgment which denied appellants a recovery for attorney's fees will be reversed and the issue remanded for trial. Finally, in light of our previous resolution of the issues of this case, we need

58

not now pass on appellants' requests for an accounting and for a declaratory judgment that the deed is valid.

The judgment that the deed is void is reversed and remanded. The judgment that appellees recover $15,000 from the appellants is reversed and judgment is rendered that appellees recover nothing from appellants. The judgment, insofar as it denied appellants a recovery of attorneys fees, is reversed and the issue of attorney's fees is remanded to the trial court for trial.

Judgment of the trial court is in part REVERSED AND REMANDED and in part REVERSED and RENDERED.