Lindgren v. Delta Investments 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00204-CV







Connie Walker Lindgren, Appellant




v.




Delta Investments, A Texas General Partnership; Billy G. Holcomb;


and Charles H. Lehne, Appellees








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 94-13820, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING







 Delta Investments (1) sued Connie Walker (2) for breach of contract arising from her failure to
provide an accounting and reimburse Delta for excess capital contributions to the Delta-Walker Joint
Venture partnership. Delta sought an accounting, dissolution, reimbursement, and attorney's fees. 
Following a jury verdict and judgment favorable to Delta, Walker appeals. We will affirm.



BACKGROUND


 On August 27, 1984, Delta and Walker created the Delta-Walker Joint Venture ("Delta-Walker") for the purpose of purchasing and developing a tract of property in Cedar Park, Texas, known
as the "Hatch Lane" property. The ensuing financial obligations of Delta-Walker and the disputed
contributions and liabilities of the parties led to the present litigation. Because the financial transactions
forming the basis of this dispute are complicated and essential to our holding, we set forth the facts in some
detail.



A.  The Debts

 Upon the formation of the joint venture, Delta-Walker received an initial loan of $790,000
(the "joint venture note") from Texas Commerce Bank ("TCB") to purchase the Hatch Lane property. 
Delta-Walker received an additional loan of $164,963.81 (the "utilities note") to establish utilities on the
property.

 In September of 1988, Delta Investments, individually, borrowed $297,000 (the "Delta
note") from TCB, secured by eleven lots it owned individually and applied $265,774.94 of the loan
proceeds to pay off both the principal and interest on the utilities note and the accrued interest on the joint
venture note. In July of 1989, Walker made a cash payment of $61,511.10 to TCB toward the interest
on the joint venture note. In May of 1991, TCB foreclosed on the lots put up by Delta as collateral on the
Delta note and gave Delta a credit of $142,503.79 from the sale of the lots.

 In July of 1994, TCB, Delta, Delta-Walker, Holcomb, Lehne, and Walker entered into
a settlement agreement in which Delta made a cash payment of $265,000 to TCB and renewed a separate
unrelated note for $100,000; in return, TCB released all of the parties from liability on all existing loan
obligations to TCB. (3) Further, Delta-Walker agreed TCB would receive the proceeds from the foreclosure
on the Hatch Lane property; in return, TCB released all parties to the settlement agreement from liability
on the joint venture note.



B.  The Dispute

 Although the settlement agreement released Delta-Walker from its financial obligations, the
dispute regarding the partners' capital contributions was just beginning. On July 21, 1994, Delta sent a
letter to Walker setting forth her share of Delta's contributions to reduce the debts of the joint venture. 
Walker replied she did not owe anything to Delta. On September 29, 1994, Delta sent a second letter to
Walker demanding reimbursement. On November 3, 1994, Delta filed a petition in the district court
seeking an accounting, dissolution of the partnership, attorney's fees, and reimbursement by Walker in the
amount of $125,071.47 as her share of the contributions made by Delta.



C.  The Trial

 In a trial before a jury, both parties presented evidence of the various financial transactions
entered into by the parties for the benefit of the joint venture. The trial court submitted (1) a broad-form
jury question inquiring as to what sum of money, if any, would compensate Delta Investments for capital
contributions to Delta-Walker not matched by Walker; and (2) a jury question on the issue of whether
Walker breached the joint-venture agreement by failing to reimburse Delta for half of its capital
contributions and provide an accounting. In addition, the trial court submitted jury questions on the issue
of attorney's fees.

 The jury returned a verdict that (1) Walker owed Delta $65,000 for capital contributions
made by Delta to the joint venture and not matched by Walker; (2) Walker breached the joint-venture
agreement; and (3) Delta was entitled to reasonable attorney's fees equal to forty percent of the judgment
plus five percent if the case were appealed. The trial court rendered judgment in accordance with the jury
verdict. Both parties filed motions for judgment notwithstanding the verdict and motions to disregard the
jury's answers. Walker filed a motion for new trial. All motions were overruled by the trial court.



D.  The Appeal

 Walker appeals in nine points of error. In points of error one and two, she challenges the
jury's answer to the broad-form question regarding the unmatched contributions made by Delta. In points
of error three and seven, she complains of the trial court's failure to submit her requested issues and
instructions as part of the jury charge. In points of error four, five, six, and eight, she complains that the
question of whether she breached the joint venture agreement should not have been submitted to the jury
and challenges the jury's answer and the award of attorney's fees. In point of error nine, she complains that
the trial court erred in rendering judgment on the jury verdict without taking into consideration the amounts
owed to her by Delta.

 Delta raises a single cross-point appealing the trial court's denial of its motion to disregard
the jury finding and enter judgment notwithstanding the verdict in an amount greater than $65,000.


DISCUSSION


I. The Damage Award

 A. Standard of Review

 In points of error one and two, Walker contends the trial court erred in rendering judgment
on the jury verdict because there is no evidence to support the jury's finding on the issue of reasonable
compensation, or in the alternative, the evidence is factually insufficient to support the jury's finding.

 In deciding a no-evidence point, we must consider only the evidence and inferences tending
to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. 
Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Best v. Ryan Auto Group, Inc.,
786 S.W.2d 670, 671 (Tex. 1990). We will uphold the finding if more than a scintilla of evidence supports
it. Crye, 907 S.W.2d at 499. To determine the factual sufficiency of the evidence, we must consider and
weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In
re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). 



 B. Review of the Evidence

 In response to the trial court's broad-form question, the jury found $65,000 would
compensate Delta for its capital contributions to the joint venture that were not matched by Walker. As
the trier of fact, the jury has the discretion to award damages within the range of evidence presented at trial. 
Howell Crude Oil Co. v. Donna Refinery Partners, Ltd., 928 S.W.2d 100, 108 (Tex. App.--Houston
[14th Dist.] 1996, writ requested). In Texas Workers Compensation Commission v. Garcia, 893
S.W.2d 504 (Tex. 1995), the Texas Supreme Court noted that, in cases where the range of answers is not
restricted by the substantive law granting the remedy, the jury may consider conflicting expert testimony
on a particular issue and, using its judgment as the finder of fact, blend that testimony to arrive at a proper
verdict. Id. at 529; see also City of Houston v. Harris County Outdoor Advertising Assoc., 879
S.W.2d 322, 334-35 (Tex. App.--Houston [14th Dist.] 1994, writ denied), cert denied, 116 S. Ct. 85
(1995) (noting the trier of fact has the discretion to award damages within the range of evidence presented
at trial). (4)

 The evidence presented at trial shows that Walker made a straight cash payment toward
the joint-venture note, whereas Delta contributed part of the proceeds of a separate loan. That loan was
not repaid in cash; instead, TCB gave Delta a credit for the proceeds from foreclosure on the lots Delta
put up as security for the loan and forgave the balance as part of the settlement agreement. The value of
the foreclosed lots, for purposes of determining Delta's capital contribution to the joint venture, was
disputed at trial: Delta argued the lots should be valued at fair market value; Walker contended the lots
should be valued at cost.

 In addition to the conflicting evidence regarding the valuation of the lots, the parties dispute
the effect of the final settlement agreement on the joint venture note and the liabilities of the parties. Delta
contends twenty-nine percent of its cash payment of $265,000 pursuant to the settlement agreement was
applied toward the joint venture note. Walker contends TCB did not apply any portion of Delta's cash
payment toward the discharge of the joint venture note but instead accepted the proceeds from the
foreclosure sale of the Hatch Lane property as full payment on the note.

 We believe the jury was entitled to take into consideration these intangible factors such as
the value of a cash payment as opposed to payment by loan, the valuation of the lots put up as collateral,
and the quantitative effect of the settlement agreement on the various liabilities of the parties. The parties
presented the jury with a wide range of testimony regarding the financial contributions of Delta and Walker
to the debts of the joint venture. Delta urges Walker owes a total of at least $125,071.47; Walker
contends she owes nothing. As noted above, the jury has the discretion to award damages within the range
of evidence presented at trial. Because we cannot say the jury's answer of $65,000 is outside the range
of evidence the jury could properly consider, we overrule Walker's points of error one, two, and nine and
Delta's cross-point of error.



II.  The Jury Charge

 In points of error three and seven, Walker contends the trial court erred in failing to submit
her requested issues and instructions. Walker requested that the trial court instruct the jury that one partner
may not profit from another partner and, as a confidential agent of all other partners, a partner must make
full disclosure of all material facts relating to the partnership affairs. Walker also requested that the court
submit special issues on what loss, if any, Delta suffered arising from the Delta note and whether Delta's
cash payment under the settlement agreement was voluntary.

 A trial court's refusal to submit requested instructions or special issues will not be
overturned on appeal absent an abuse of discretion. Magro v. Ragsdale Bros., Inc., 721 S.W.2d 832,
836 (Tex. 1986); City of Houston v. Leach, 819 S.W.2d 185, 197 (Tex. App.--Houston [14th Dist.]
1991, no writ). A trial court has broad discretion in determining the proper issues and instructions to be
submitted to the jury. Gunn Buick, Inc. v. Rosano, 907 S.W.2d 628, 632 (Tex. App.--San Antonio
1995, no writ). A trial court abuses its discretion only when it acts in an unreasonable and arbitrary manner
or without reference to any guiding principles. City of Austin v. Janowksi, 825 S.W.2d 787, 788 (Tex.
App.--Austin 1992, no writ).

 The trial court submitted broadly question number one, which asked: "What sum of money,
if any, if now paid in cash, would fairly and reasonably compensate Delta Investments for any capital
contributions made to the Joint Venture that were not matched by the Walkers?" Pursuant to rule 278, only
those issues and instructions raised by the pleadings and the evidence are to be submitted to the jury. Tex.
R. Civ. P. 278. Further, the trial court need only submit the controlling issues in a case and need not submit
shades and phases of controlling issues. Id. The trial court's refusal to submit "other and various phases
on different shades of the same question" will not be reversed on appeal. Sheldon L. Pollack Corp. v.
Falcon Indus., Inc., 794 S.W.2d 380, 383 (Tex. App.--Corpus Christi 1990, writ denied). Walker's
request for a special issue on the loss, if any, suffered by Delta arising from the Delta note is simply a
variation of the issue actually submitted by the court. We cannot say the trial court abused its discretion
in refusing to submit Walker's special issue number one.

 Question number one was accompanied by an instruction that the jury could consider only
"the amount that the contributions add to the assets of the joint venture" and "the amount that the
contributions decrease the liabilities of the Joint Venture." The trial court has the discretion to determine
which instructions are necessary to answer each special issue. See Mobil Chem. Co. v. Bell, 517 S.W.2d
245, 256 (Tex. 1974). Walker's requested instructions dealt with the relationship of one partner to
another, whereas the submitted special issues dealt solely with the financial losses of the partners. We
cannot say the trial court abused its discretion in refusing to submit Walker's requested instructions. 
Accordingly, we overrule points of error three and seven.



III.  Breach of Contract and Attorney's Fees

 Walker contends the breach of contract finding is not supported by sufficient evidence and
argues that the special issue regarding breach of contract should not have been submitted to the jury but
rather decided by the trial court as a matter of law. Walker also complains of the broad form of the special
issue and challenges the jury's finding and the award of attorney's fees in favor of Delta. A determination
that Walker did not in fact breach the agreement would not require a reversal on any issue except attorney's
fees.

 From the record and the pleadings, it appears Delta's main contention was that Walker
refused to engage in any type of accounting, which was required under the articles of the joint venture
agreement. (5) At trial, the jury heard evidence of Delta's attempts to obtain an accounting from Walker. As
evidenced by the letters exchanged between the parties prior to this litigation, Walker insisted she owed
nothing when confronted by Delta with the discrepancy in capital contributions. We hold this evidence is
more than sufficient to sustain the jury's finding of breach of contract. Accordingly, we overrule points of
error five and six.

 Walker contends that the breach of contract issue should not have been submitted to the
jury because it called for a legal as opposed to factual determination. Although a trial court should not
submit a pure question of law to the jury, it is permissible to submit a question that asks the jury to resolve
a factual dispute concerning a party's failure to perform according to the terms of a contract. Meek v.
Bishop Peterson & Sharp, P.C., 919 S.W.2d 805, 808 (Tex. App.--Houston [1st Dist.] 1996, writ
denied); Canaan v. Varn, 591 S.W.2d 583, 589 (Tex. Civ. App.--Corpus Christi 1979, writ ref'd n.r.e.);
see also Briargrove Shopping Center v. Vilar, Inc., 647 S.W.2d 329, 333 (Tex. App.--Houston [1st
Dist.] 1982, no writ). Here, Delta sued Walker to recover for Walker's alleged failure to reimburse Delta
for its capital contributions toward the debts of the joint venture. The special issue regarding breach of
contract asked the jury to resolve this factual dispute between the parties.

 We cannot say the trial court abused its discretion in submitting the special issue and
awarding attorney's fees in favor of Delta. Accordingly, we overrule points of error four and eight.


CONCLUSION


 Having overruled all of Walker's points of error and Delta's cross-point of error, we affirm
the judgment of the trial court.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd and B. A. Smith

Affirmed

Filed: December 12, 1996

Publish

1. [1]  Delta Investments, appellee, is a partnership between Billy Holcomb and Charles Lehne, appellees,
and will be referred to herein as "Delta."
2. [2]  Connie Walker Lindgren ("Walker") appeals individually and as executrix of her deceased husband's
estate.
3. [3]  The total debt released in the settlement agreement consisted of eight loans: the Delta note, the joint
venture note, three loans by Delta individually, and three loans by Holcomb, Lehne-Holcomb, and Lehne
Enterprises, separately.
4. [4]  Insurance Co. of North America v. Cangelosi, 217 S.W.2d 888 (Tex. Civ. App.--Waco 1949,
no writ), illustrates the point. In a suit to recover for the loss of hay destroyed in a barn fire, the jury was
presented with conflicting evidence of both the size of the barn and the average size of a bale of hay. Id.
at 889-90. The conflicting evidence showed that the barn could have held anywhere from 931 to 10,000
bales of hay at the time of the fire. Id. The appellate court upheld the jury's finding of 4,000 bales because
it was primarily for the jury to consider the evidence and resolve the fact issue. Id.


 Also, for example, in condemnation cases, juries receive evidence of the value of the property before
and after condemnation. In reviewing the record in such a case, an appellate court must determine "if there
has been a significant departure by the jury from the range of expert testimony presented at trial." Parallax
Corp., N.V. v. City of El Paso, 910 S.W.2d 86, 93 (Tex. App.--El Paso 1995, writ denied). When,
as in the present case, the valuation of the parties' contributions to the debts of the joint venture is imprecise
and subject to conflicting interpretations, we acknowledge the jury's discretion to award damages within
the range of evidence presented at trial. See Howell Crude Oil Co., 928 S.W.2d at 108.
5. [5]  Paragraph eleven of the joint venture agreement provides: "At the time when the joint venture is
dissolved, the joint venturers if living or the surviving joint venturer or joint venturers and the legal
representatives of the deceased joint venturer shall make a perfect, just and true final account of all things
relating to the business of the joint venture and in all things truly adjust same."


RONG> (5) At trial, the jury heard evidence of Delta's attempts to obtain an accounting from Walker. As
evidenced by the letters exchanged between the parties prior to this litigation, Walker insisted she owed
nothing when confronted by Delta with the discrepancy in capital contributions. We hold this evidence is
more than sufficient to sustain the jury's finding of breach of contract. Accordingly, we overrule points of
error five and six.

 Walker contends that the breach of contract issue should not have been submitted to the
jury because it called for a legal as opposed to factual determination. Although a trial court should not
submit a pure question of law to the jury, it is permissible to submit a question that asks the jury to resolve
a factual dispute concerning a party's failure to perform according to the terms of a contract. Meek v.
Bishop Peterson & Sharp, P.C., 919 S.W.2d 805, 808 (Tex. App.--Houston [1st Dist.] 1996, writ
denied); Canaan v. Varn, 591 S.W.2d 583, 589 (Tex. Civ. App.--Corpus Christi 1979, writ ref'd n.r.e.);
see also Briargrove Shopping Center v. Vilar, Inc., 647 S.W.2d 329, 333 (Tex. App.--Houston [1st
Dist.] 1982, no writ). Here, Delta sued Walker to recover for Walker's alleged failure to reimburse Delta
for its capital contributions toward the debts of the joint venture. The special issue regarding breach of
contract asked the jury to resolve this factual dispute between the parties.

 We cannot say the trial court abused its discretion in submitting the special issue and
awarding attorney's fees in favor of Delta. Accordingly, we overrule points of error four and eight.


CONCLUSION


 Having overruled all of Walker's points of error and Delta's cross-point of error, we affirm
the judgment of the trial court.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd and B. A. Smith

Affirmed

Filed: December 12, 1996

Publish

1. [1]  Delta Investments, appellee, is a partnership between Billy Holcomb and Charles Lehne, appellees,
and will be referred to herein as "Delta."
2. [2]  Connie Walker Lindgren ("Walker") appeals individually and as executrix of her deceased husband's
estate.
3. [3]  The total debt released in the settlement agreement consisted of eight loans: the Delta note, the joint
venture note, three loans by Delta individually, and three loans by Holcomb, Lehne-Ho